Kathleen HAKKEN, Plaintiff,

v.

WASHTENAW COUNTY, Washtenaw County Sheriff Ronald Schebil, Washtenaw County Deputy Kevin Deacons, Washtenaw County Deputy Robert Mills, III, Washtenaw County Deputy William Coggins, and Michigan State Police Sergeant Sebring, Defendants.

No. 94–CV–70481–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 29, 1995.

James R. Stearns, Foley & Stearns, Dearborn, MI, for Kathleen Hakken.

Curtis N. Hedger, Washtenaw County Prosecutor's Office, Ann Arbor, MI, Ian J. Reach, Reach & Hollenshead, Ann Arbor, MI, Robert E. Guenzel, Nichols, Sacks, Slank & Sweet, Ann Arbor, MI, for County of Washtenaw, Washtenaw County Sheriff's Dept., Robert Schebil, Kevin Deacons, Robert Mills, III, William Coggins and Sergeant Sebring.

Michael C. McDaniel, Michigan Department of Attorney General, Tort Defense Division, Lansing, MI, for Michigan Department of State Police.

### MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

### I. INTRODUCTION/FACTS:

This matter is now before the Court on the Washtenaw County Defendants' Motion for Summary Judgment. Responses were filed and a hearing held on the matter.

Plaintiff alleges a Section 1983 claim against Defendants claiming that Defendants' policies in handling domestic abuse cases violate the equal protection clause.

Plaintiff brought the suit for herself alleging that from April 1985 through October 1991, her former husband repeatedly assaulted Plaintiff and her children, that Defendants were contacted repeatedly regarding these assaults and that the Sheriff's Department did not enforce the laws prohibiting such conduct. Plaintiff also brought suit against Defendants on behalf of her decedent daughter alleging that Defendants failed to arrest Jason Briggs, her daughter's boyfriend, on February 13, 1993. Ten days later, Jason Briggs shot her daughter while asleep in her bed.

## A. *Facts as to Plaintiff's own cause of action*

On April 6, 1985, Plaintiff married her second husband, Neal Hakken. Plaintiff asserts that she and her children were verbally, physically and emotionally abused by Neal Hakken. Plaintiff further asserts that these physical assaults were reported to the Washtenaw County Sheriff's Department on several occasions. Plaintiff described four incidents in her affidavit, one of which led to prosecution and conviction.

## B. *Facts as to Greta Slusher's death*

In 1992, Jason Briggs and Greta Slusher began dating. Greta was twelve years old and Jason was sixteen at that time. According to Plaintiff, Jason became obsessed with Greta and he began staying at the Hakken residence starting sometime in the middle of their relationship. Plaintiff asserts that she did not approve of her daughter's relationship with Jason Briggs but was afraid that if she forbade her daughter from seeing Jason, they would run off together. In late 1992, Plaintiff states that she was concerned about the relationship and called the Washtenaw County Sheriff's Department on at least three occasions asking them to get Greta away from Jason but the deputies declined to assist Plaintiff stating that there was nothing they could do if Greta went voluntarily with Jason. In January 1993, Jason began staying in Greta's bedroom at night by climbing in through her window after the family was asleep. Plaintiff asserts that she called the police and asked them to remove Jason

Briggs from her property and was told that if Jason Briggs returned to the property he would be arrested for trespassing.

In the early morning hours of February 13, 1993, Jason and Greta, along with Jason's sister, Sandy, and her boyfriend, Chris Petersen, were visiting Chris Petersen's house in Lenawee County. Chris Petersen agreed to drive Greta back to her house in Grass Lake which is located in Washtenaw County. Jason and Greta were in the back seat while Sandy sat in front with Chris Petersen. According to Plaintiff's Second Amended Complaint, the assault occurred in Lenawee County. Chris Petersen and Sandy Briggs claim that they did not see the incident, although they heard a commotion in the backseat. Chris Petersen dropped Jason and Greta off at Greta's driveway and contacted the Washtenaw County Sheriff's Department to have a car sent to Plaintiff's residence.

Plaintiff also received a call from Sandy Briggs who told her that Jason was beating Greta up and that Chris Petersen had dropped them off at the end of her driveway. Plaintiff states she got into her car and went looking for Greta. She could not find Greta and eventually returned to the house where she found Greta sobbing and shaking. Plaintiff noticed that her face and neck were covered with red blotches. Greta told her mother that Jason had attempted to kill her by strangling her. At approximately 3:00 a.m., three Washtenaw County Sheriff Deputies arrived at Plaintiff's home. Greta told the deputies that Jason had strangled her in the back of the car and that she passed out and did not revive until the car came into Manchester. The deputies told Plaintiff that the strangulation occurred in Lenawee County and there was nothing they could do. According to Deputy Deacon's affidavit, he had asked Greta if Jason Briggs had done anything to her after they re-entered Washtenaw County which would justify his arrest and Greta had answered no. Plaintiff states that at her request, Deputy Deacons called the Lenawee County Sheriff's Department and asked them to send a car for Jason and was told that they did not have a car available. Plaintiff requested that they arrest

Jason for trespassing but the deputies stated that they could not because Greta had allowed him on the property. The deputies did look for Jason and found him in a car on Plaintiff's property and escorted Jason to his father's home in Manchester. According to Plaintiff, Jason admitted to the deputies that he attempted to kill Greta but despite the confession, they did not arrest him. Deputy Deacon urged Jason's father to take Jason to the University of Michigan Psychiatric Hospital for evaluation which he did later that day. The hospital refused to admit Jason. Later that day, Jason and his father attended an interview with the Michigan State Police in Adrian. At that time, Jason admitted choking Greta in the car and again in the driveway. The State Police chose not to arrest Jason at that time but released him to his father's custody. During the early morning hours of February 23, 1993, Jason killed Greta while she slept in her bed and later that morning, he committed suicide.

## II. ANALYSIS:

### A. Standard of Review.

Defendants Washtenaw County, Washtenaw County Sheriff Ronald Schebil, Washtenaw County Deputies Kevin Deacons, Robert Mills, III and William Coggins, move for summary judgment pursuant to Fed. R.Civ.Proc. 12(b)(6) and Fed.R.Civ.Proc. 56(b). Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson,* 627 F.Supp. 1458, 1463 (E.D.Mich.1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint must be treated as true. *Janan v. Trammell,* 785 F.2d 557, 558 (6th Cir.1986). If matters outside the pleading are presented in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment under Rule 56(b) and disposed of as provided in Rule 56. Because matters outside the pleadings have been presented by both parties, the instant motion shall be considered a motion for summary judgment under Rule 56(b).

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2551–2552. A court must look to the substantive law to identify which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### B. Section 1983/Equal Protection Standard.

Section 1983 of 42 United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States

or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not create substantive rights. Rather, it provides a recovery mechanism for deprivation of a federal right. To establish a cause of action under § 1983, a plaintiff must allege: (1) deprivation of a federal right by (2) a person acting under color of state law. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). A municipality may be liable for a constitutional violation under § 1983, but only if the violation was caused by a municipal policy or custom, that is, if the municipality itself caused the constitutional violation. Respondeat superior or vicarious liability does not apply under § 1983. *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

In the instant case, Defendants do not contest that action under color of state law has occurred. Upon a reading of Plaintiff's Amended Complaint and brief in response to Defendants' motion for summary judgment, it appears that Plaintiff is claiming a deprivation of equal protection under the law because she and her decedent were victims of domestic assault and that Defendants by policy or custom provided less protection for domestic violence victims.

■ Although there is no general constitutional right to police protection, the State may not discriminate in providing such protection. *Bartalone v. County of Berrien,* 643 F.Supp. 574, 577 (W.D.Mich.1986). A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 256, 97 S.Ct. 555, 559, 50 L.Ed.2d 450 (1977). It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor. *Id.* at 265, 97 S.Ct. at 563. Therefore, in order to survive summary judgment, a plaintiff must go beyond the pleadings and submit evidence of specific facts that demonstrate that it is the policy or custom of the defendants to provide less police protection to victims of domestic assault than to other assault victims. A plaintiff must also provide evidence that discrimination was a motivating factor for the defendants and that he or she was injured by operation of the policy or custom.

C. *Whether Jason Briggs' attack on Greta Slusher constitutes domestic violence for the purposes of Plaintiff's 42 U.S.C. § 1983 claim.*

■ Defendants assert that Jason Briggs' actions against Greta Slusher do not constitute "domestic violence" under Michigan law. MCL § 400.1501(c) defines "domestic violence" as follows:

> [A] violent physical attack or fear of violent physical attack perpetrated by an assailant against a victim; in which the victim is a person assaulted by or threatened by assault *by his or her spouse or former spouse or an adult person or emancipated minor assaulted by an adult person of the opposite sex with whom the assaulted person cohabits or formerly cohabited; and in which the victim and assailant are or were involved in a consenting, sexual relationship.* (emphasis added).

MCL § 776.22(3)(b)(ii), under the Michigan Criminal Code, states:

> When the officer has probable cause to believe *spouses, former spouses, individuals who have had a child in common, or other individuals who reside together or formerly resided together* are committing or have committed crimes against each other, the officer, when determining whether to make an arrest of 1 or both individuals, should consider the intent of this section to protect victims of domestic violence.... (emphasis added).

Defendants assert that because Greta and Jason were never married, never had a child together or never co-habitated, and she was not an adult or an emancipated minor, that their situation does not fall under "domestic violence" under the above-cited statutes. Plaintiff asserts that there are other statutes

in Michigan which pertain to domestic violence and none of these statutes contain as narrow a definition of domestic violence as M.C.L. § 400.1501(c). M.C.L. § 764.15A talks in terms of persons residing or having resided in the same household as the victim, along with M.C.L. § 776.22(3)(b)(ii) cited above, and M.C.L. § 600.2950, which extends the remedy of immediate arrest of an assailant violating a domestic assault injunction to "a person residing or having resided in the same household as the victim." Michigan statutes do not define "residing". According to Plaintiff, these are remedial statutes and should be liberally construed to achieve their intended purposes. *Rancour v. Detroit Edison Co.,* 150 Mich.App. 276, 285, 388 N.W.2d 336 (1986).

Plaintiff asserts that Jason Briggs resided for a period of time in the same household as Greta Slusher and that the Sheriff's Department knew that Jason and Greta were boyfriend and girlfriend (Plaintiff's Ex. A, pp. 73, 123, 193; Ex. B. pp 17, 70; Ex. C, p. 15, Exs. D and E.) Plaintiff's affidavit states that in January 1993, Jason Briggs developed a habit of staying in Greta's bedroom at night and was regularly staying in Greta's bedroom during this period of time. This statement somewhat contradicts Plaintiff's statement that she did not approve of the relationship and that she had asked the police on several occasions to remove Jason Briggs from her property. However, viewing the facts in favor of the nonmoving party and construing the above remedial statutes liberally, Plaintiff's statements that Jason lived with Greta and the Sheriff's Department knowledge that they were boyfriend and girlfriend, would be sufficient to categorize these circumstances as a "domestic relation" situation. Thus, Jason Briggs' attack on Greta Slusher would constitute "domestic violence" for purposes of Plaintiff's § 1983 claim.

It should also be noted that Plaintiff's Complaint also asserts a domestic violence claim under § 1983 for Plaintiff herself as it relates to her ex-husband, Neal Hakken. In accepting the facts alleged in the Complaint as true, it appears that Plaintiff herself is a victim of domestic violence with respect to the alleged actions of her ex-husband.

### D. *Whether Plaintiff has been deprived of a right secured by the constitution and laws of the United States.*

#### 1. *Status of the Law.*

■ Defendants assert that Plaintiff has provided no evidence that Defendants have an unconstitutional policy or custom which discriminates against domestic violence victims. Defendants apply the three-part test found in *Hynson v. City of Chester Legal Dep't,* 864 F.2d 1026, 1031 (3rd Cir.1988). The Third Circuit stated that in order to survive summary judgment, a plaintiff must: 1) proffer sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of the police to provide less protection to victims of domestic violence than to other victims of violence, 2) that discrimination against women was a motivating factor, and, 3) that the plaintiff was injured by the policy or custom. *Hynson,* 864 F.2d at 1031. In support of their position, Defendants submitted various exhibits, including, deposition testimony of Michael Briggs (Defendants' Ex. 1), the State Police report of the February 13, 1993 incident (Defendants' Ex. 2), affidavits of Kevin Deacons and James Fink (Defendants' Exs. 3 & 4), and commendations of the Sheriff's Department's efforts as to domestic violence matters (Defendants' Exs. 5, 6 & 7).

Plaintiff admits that the Washtenaw County Sheriff's Department has written policies "requiring a firm response to domestic violence." (Plaintiff's brief, p. 15) However, Plaintiff asserts that "[u]nfortunately, the Defendants talk a good game but they fail to adhere to their own written policies." (*Id.*) Plaintiff states in her brief that "the fact that the Sheriff's Department has 'written policies', which on their face appear to be constitutional does not mean anything." (Plaintiff's brief, p. 18). In support of her position that Defendants do not follow their own written policies, she has submitted the following exhibits: Depositions of Michael Briggs, Sandra Briggs, and Chris Petersen (Plaintiff's Exs. A, B, C); Plaintiff's affidavit (Plaintiff's Ex. D); Washtenaw County Sheriff's Department's policy and procedure regarding domestic violence (Plaintiff's Exs. F & G);

newspaper articles (Plaintiff's Exs. H, I, J, & K); the State Police's incident report of the February 13, 1993 incident (Plaintiff's Ex. L); affidavits of two women who are mother and daughter (Plaintiff's Exs. M & N); and affidavit of Plaintiff's experts (Plaintiff's Exs. O & P).

In *DeShaney v. Winnebago County DSS,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the Court held that "a State's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause." 489 U.S. at 197, 109 S.Ct. at 1004. However, footnote three of the Court's opinion qualifies this holding by observing that "[the] State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause. *See Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886)." *DeShaney,* 489 U.S. at 197 n. 3, 109 S.Ct. at 1004, n. 3. It should be noted that the Sixth Circuit and the Supreme Court have not addressed the issue of whether or not victims of domestic violence are entitled to the Equal Protection Clause. Some circuits, however, have addressed this issue.

The Fifth Circuit addressed this issue in *McKee v. City of Rockwall,* 877 F.2d 409, 413–14 (5th Cir.1989), stating:

> The *DeShaney* rule leaves officers and law enforcement agencies with some discretionary authority: they need not fear that, in any close case, they must choose between liability for a potential false arrest and liability for a potentially actionable non-arrest.
>
> \* \* \* \* \* \*
>
> If indeed the police could reasonably have believed that they lacked grounds to make an arrest, their refusal to do so cannot be unconstitutional.
>
> \* \* \* \* \* \*
>
> McKee can sustain her claim only by showing that the non-arrest was the result of discrimination against a protected class. McKee purports to find such discrimination in an alleged policy of the Rockwall Police Department discouraging arrests in domestic violence cases. McKee contends that this policy discriminates against women.
>
> McKee must present some evidence of such a policy in order to survive the defendants' summary judgment motion. When the nonmovant fails to make a sufficient showing on an essential element of her case, the moving party is entitled to summary judgment since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*McKee,* 877 F.2d at 414–15. Plaintiff's evidence in *McKee* consisted of statistical comparisons and plaintiff's own affidavit. Based on this evidence, the *McKee* court found that plaintiff could not meet her burden that defendants had a discriminatory policy against victims of domestic violence. The Fifth Circuit in *McKee* recognized a class-based discrimination suit based on a plaintiff's status as a victim of domestic violence but found that plaintiff's gender-based claim was groundless because plaintiff had failed to present any evidence of adverse impact on women.

The Tenth Circuit addressed the issue of domestic violence victims in the equal protection clause context. In *Watson v. City of Kansas City,* 857 F.2d 690, 694 (10th Cir. 1988), the court stated:

> A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent. (cites omitted). It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor. (cites omitted). So, to survive summary judgment, the plaintiff must go beyond her pleadings and show that she has evidence of specific facts that demonstrate that it is the policy or custom of the defendants to provide less police protection to victims of domestic assault than to other assault victims. She must also provide evidence that discrimination was a motivating factor for the defendants and that she was injured by operation of the policy of custom.

The plaintiff in *Watson* submitted statistics showing that in nondomestic assault cases, there was an arrest rate of 31% whereas in domestic assaults, there was only an arrest rate of 16%. The *Watson* court noted that statistical evidence alone may not be enough to prove the existence of a policy or custom but taken with the plaintiff's version of events regarding her own situation, which alone, would also probably not be sufficient to evidence different treatment, the court found that evidence of a pattern of indifference is evidence enough to survive summary judgment. *Watson*, 857 F.2d at 696.

The Third Circuit in *Hynson, supra,* and *Brown v. Grabowski*, 922 F.2d 1097 (1990), set forth the three-prong test for a plaintiff to establish a prima facie case on equal protection grounds based on gender cited in Defendants' brief. In order to survive summary judgment a plaintiff must proffer sufficient evidence on each of the three prongs. *Hynson*, 864 F.2d at 1031; *Brown*, 922 F.2d at 1117.

In *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir.1988), the Ninth Circuit appears to have recognized an equal protection claim based on the treatment of domestic abuse cases less seriously than other assaults, as well as an animus against abused women. The Ninth Circuit remanded the case in order to allow plaintiff to amend her complaint to allege that the failure of the police to respond to complaints lodged by women in domestic violence cases may violate the equal protection clause. *Balistreri*, 901 F.2d at 701.

Although the Sixth Circuit has not authoritatively addressed the issue of the equal protection clause and whether or not domestic violence victims have a claim under that clause, the issue has been addressed by the Sixth Circuit in an unpublished opinion, *Perrino v. City of Newton Falls*, Table case 972 F.2d 348 (6th Cir.1992). The plaintiff in *Perrino* alleged that her equal protection rights were violated because the prosecutor's action of not pursuing a motion to reinstate her husband's original sentence was pursuant to an official policy of denying domestic violence victims the equal protection of the law. The district court first recognized that plain-

tiff had stated an equal protection claim. The district court then granted summary judgment in favor of defendants. The Sixth Circuit affirmed the district court stating that plaintiff failed to offer any other probative evidence showing that as a matter of custom the defendants exercised final policy-making authority over the criminal cases and that plaintiff could not overcome defendants' claim that only an agency relationship existed.

Two other district courts in the Sixth Circuit have found that domestic violence victims do have a claim under the equal protection clause. In *Cellini v. City of Sterling Heights*, 856 F.Supp. 1215 (E.D.Mich.1994), the court recognized that a plaintiff may have a claim under the equal protection clause against the city because domestic assault cases were treated differently than other types of assaults. The *Cellini* court denied the city's motion for summary judgment stating that plaintiff had provided sufficient evidence to survive summary judgment. Plaintiff submitted the depositions of three officers who testified that prior to 1990, the policy of the police department with regard to spouse abuse or domestic disturbances was not to arrest for misdemeanor assault unless the assault was committed in an officer's presence. Plaintiff also asserted that the city failed to adequately train its officers. In support of this claim, Plaintiff submitted the officers' deposition testimonies that they never received training specifically directed toward domestic violence and that one of the officers only attended two seminars. These seminars focused on defusing domestic violence situations rather than making arrests. One officer also testified that he could not recall ever making a domestic violence arrest. The city's motion for summary judgment was denied, but without prejudice, pending submission by plaintiff of statistical study based on the city's police records.

In *Smith v. City of Elyria*, 857 F.Supp. 1203 (N.D.Ohio 1994), the court denied the city's motion for summary judgment, finding that plaintiff had presented enough evidence to survive summary judgment. The court found that the 1984 Field Operation Family Disputes (FOFD) document expressly treats

domestic disputes differently than nondomestic disputes. In addition, the court found that the manner in which the police officers actually responded to the domestic incident provides evidence of the department's intent to discriminate against victims of domestic violence, including allowing the victim's ex-husband to stay at the victim's home. The court, however, did not find that the officers were inadequately trained based on the police officers' conduct alone.

Although the Sixth Circuit has not addressed the issue of whether or not victims of domestic violence have an equal protection claim, it appears that such a claim is valid based on the cases cited above. The next issue is whether or not Plaintiff in the instant case has sufficiently supported her claim.

### 2. *Plaintiff's Evidence.*

As previously stated, a court must look to the substantive law to identify which facts are material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In reviewing the other circuits' standard on facts needed to survive summary judgment on this issue, it appears that the emerging standard is that: 1) a plaintiff must proffer sufficient evidence that would allow a reasonable jury to infer that it is the policy or custom of the police to provide less protection to victims of domestic violence than to other victims of violence; 2) a plaintiff must also show that discrimination against women or domestic violence victims was a motivating factor, and 3) the plaintiff must show injury sustained by the policy or custom. *Hynson,* 864 F.2d at 1031; *Watson,* 857 F.2d at 694.

 Upon review of Plaintiff's response brief, Plaintiff does not dispute that the Sheriff's policies and procedures are constitutional on its face. Plaintiff's main argument is that the policies and procedures are not followed. The evidence that Plaintiff submits to support her argument consists of Plaintiff's affidavit, the affidavits of two other women and two experts.

In her affidavit, Plaintiff alleges four specific incidents where she called the Sheriff's Department. In three of these incidents, Plaintiff claims the Sheriff's Department did not respond appropriately as directed by their own policy. On March 31, 1990, Plaintiff's ex-husband, Neal Hakken had been drinking and was kicking and hitting her son, Jason. Plaintiff called the Sheriff's Department and Neal Hakken was prosecuted and convicted of third degree child abuse. A couple of months later, Plaintiff again called the Sheriff's Department to ask if someone would come and take Neal Hakken away because of his continued abusive conduct. She was told by the deputy that she should contact Children's Protective Services. After she spoke with the deputy, two men from Protective Services arrived and told her that if she did not leave the home, they would take her children away and charge her with failure to protect. In September 1990, she called the Sheriff's Department because Neal Hakken again assaulted her and shoved her around. A deputy arrived at her home but told her that he could do nothing and left. After the deputy left, Neal Hakken started shoving her around again and punched her in the face. She again called the deputy and the same deputy returned to the home and told her that she could leave with her children or her husband could leave but nothing else could be done because Neal lived in the house also. In May 1991, Neal Hakken attempted to strangle her son and attempted to smother Plaintiff to death. Plaintiff called the Sheriff's Department in the early evening but they did not arrive until the next day and by that time, she had already removed herself from the home, along with the children.

As to the situation between her daughter and Jason Briggs, Plaintiff asserts that she had called the Sheriff's Department on at least three occasions asking them to get her daughter away from Jason because she felt that as a parent she had the right to control the action of her child. Plaintiff does not assert in her affidavit that Jason Briggs was abusing her daughter prior to the February 13, 1993 incident.

Plaintiff submitted two affidavits by a mother and daughter indicating that the Washtenaw County Sheriff's Department takes complaints about domestic problems less seriously than complaints of other assaults. In addition, Plaintiff submitted two affidavits by her expert witnesses. Mr.

Frederick J. Postill states that the Sheriff's deputies were grossly negligent in their investigation of the February 13, 1993 incident and that they were deliberately indifferent to Jason Briggs' mental health needs. Ms. Eve S. Buzawa's affidavit states that the initial police failure to arrest Jason Briggs precluded an effective criminal justice response as to the February 13, 1993 incident. The experts did not provide an opinion as to whether or not the officers' actions or inactions established a custom in that department.

At oral argument, the parties assert that statistical data was not available at that time but would be available in the future. Plaintiff asserts that the statistical data will show that crimes against women who are in relationships are treated differently than other crimes.

Based on the evidence cited above, Plaintiff has failed to establish that it was the Sheriff's Department's "custom" to treat domestic assault cases less seriously than nondomestic assault cases, contrary to its written policy and procedure. Plaintiff's version of events regarding her own situation would not be sufficient to evidence different treatment. *Watson*, 857 F.2d at 696. The affidavits of the two women, also do not evidence "custom" by the Sheriff's Department. Although statistical data, alone, may not be enough to prove the existence of a policy or custom by Defendants, the Court will allow Plaintiff to present to the Court the statistical data and a comparative study to support her argument that it is the Defendants' "custom" to provide less protection to domestic assault victims than to nondomestic assault victims. *Hynson*, 864 F.2d at 1031. At this time, the Court will deny Defendants' motion for summary judgment without prejudice.

### E. *Whether Defendant Officers are Entitled to Qualified Immunity.*

■ The individual Defendants have moved for summary judgment on the ground that they are entitled to qualified immunity from liability under § 1983. Public officials carrying out executive responsibilities, such as police officers, are entitled to qualified immunity from personal liability for money damages under § 1983. Under the doctrine of qualified immunity, such an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). "A mere handful of decisions of other circuit and district courts, which are admittedly novel, cannot form the basis for a clearly established constitutional right in this circuit." *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177–78 (6th Cir.1988).

■ Currently, there is no definitive Sixth Circuit or Supreme Court decision determining that police policies for handling domestic disputes may violate the victims' right to equal protection on the basis of their sex or status as victims of domestic violence. At the time of the alleged incidents in this matter, it was not "clearly established" that the equal protection rights of women and victims of domestic violence was violated when the police accorded different treatment to their calls for assistance in a domestic dispute. *Smith*, 857 F.Supp. at 1214; *Cellini*, 856 F.Supp. at 1222–23. The individual Defendants' motion for summary judgment should be granted. The Defendant Washtenaw County remains in the suit.

### F. *Whether the County Deputies were Grossly Negligent (State Tort Claims).*

■ Defendants contend that they are entitled to immunity on the state law claim because they meet the requirements of M.C.L. § 691.1407 which provides statutory governmental immunity to: (1) governmental agencies and officers and employees of governmental agencies (2) engaged in a governmental function (3) if the officers and em-

ployees' conduct do not amount to gross negligence (4) that is the proximate cause of the injury or damages. M.C.L. § 691.1407(1) and (2); § 691.1401(f). *Rogers v. City of Port Huron,* 833 F.Supp. 1212, 1223 (E.D.Mich.1993). "Gross negligence" means "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id.* In order to prevail, a plaintiff cannot assert that defendant's conduct was "a" proximate cause of the plaintiff's injury, but rather, must establish that defendant's conduct was "the" proximate cause of the injury. *Id.* at 1224; *Dedes v. South Lyon Schools,* 199 Mich.App. 385, 393–93, 502 N.W.2d 720 (1993).

After a review of the pleadings and exhibits in this matter, Plaintiff has failed to establish that the officers' conduct constituted gross negligence "so reckless as to demonstrate a substantial lack of concern for whether injury results." The officers did respond to Sandy Briggs' call regarding Greta and Jason and they did remove Jason from Plaintiff's property on February 13, 1993. In addition, Plaintiff cannot satisfy the burden of establishing that the officers' failure to arrest Jason Briggs on February 13, 1993 was *"the* proximate cause" of the death of decedent, which occurred on February 23, 1993. It should be noted that on February 14, 1993, it was the Michigan State Police that handled the February 13, 1993 incident and not the Washtenaw County Sheriff's Department. Therefore, the County Defendants' motion for summary judgment on the state tort claims should be granted.

G. *Whether Plaintiff's loss of consortium claim is valid.*

Since the state tort claims are dismissed, there can be no claim for loss of consortium. *Rogers,* 833 F.Supp. at 1223. Therefore, Defendants' motion for summary judgment on the loss of consortium issue should be granted.

Accordingly,

IT IS ORDERED that the individual County Defendants' Motion for Summary Judgment is hereby GRANTED based on qualified immunity;

IT IS FURTHER ORDERED that the Defendant Washtenaw County's Motion for Summary Judgment is hereby DENIED without prejudice as to the custom issue; and

IT IS FURTHER ORDERED that the state law tort claims against the County Defendants are hereby GRANTED.