70 F.3d 907
 105 Ed. Law Rep. 36
 Terri S. SARGI, Administratrix of the Estate of Tami Erin
Sargi, a minor child, Plaintiff-Appellant,
v.
KENT CITY BOARD OF EDUCATION; Charles Densmore,
Individually; Charles Sackett, Individually,
Defendants-Appellees.
 No. 94-3647.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 17, 1995.
Decided Dec. 1, 1995.
 
 Benito C.R. Antognoli (argued and briefed), Brian D. Goldwasser, Weisman, Goldberg & Weisman, Cleveland, OH, for Plaintiff-Appellant.
 Daniel D. Mason (argued and briefed), Warhola, O'Toole, Loughman, Alderman & Stumphauzer, Lorain, OH, for Defendants-Appellees.
 Before: MERRITT, Chief Judge; KENNEDY, Circuit Judge; JOINER,* District Judge.
 KENNEDY, Circuit Judge.
 
 
 1
 Plaintiff, Terri S. Sargi, Administratrix of the Estate of Tami Erin Sargi, appeals the summary judgment for defendants, Kent City Board of Education (the "Board"), Charles Densmore, and Charles Sackett, on her 42 U.S.C. Sec. 1983 and related state claims. She argues that defendants' failures to maintain adequate policies, rules, and regulations and to train its employees in emergency procedures resulted in her minor daughter's death while returning home on a school bus. For the reasons stated, we AFFIRM.
 
 I. Facts
 
 2
 The material facts of this case, though tragic, are undisputed. Tami Sargi was a passenger on a school bus owned and operated by the Board when she collapsed due to heart failure. Prior to this incident, plaintiff had advised school authorities that decedent suffered from a seizure disorder and Q.T. Syndrome, a heart condition.
 
 
 3
 When Tami collapsed, the bus driver tried to contact her garage on a C.B. channel but was unable to do so because the equipment was not working properly. Believing that decedent was having a seizure, the school bus driver thought that medical attention was unnecessary and continued to take the other children who were on the bus to their homes.[1] At one of the stops, a neighbor approached with a portable phone, at which time the bus driver contacted the bus garage and told the secretary to contact plaintiff. By the time the bus reached plaintiff's home, decedent was not breathing. Decedent fell into a coma and died three days later.
 
 
 4
 Plaintiff claims that the Board, its Transportation Coordinator, Charles Densmore, and its Business Manager, Charles Sackett, failed to maintain adequate policies, rules, and regulations, and failed to train its employees in CPR and emergency procedures, thereby resulting in decedent's death. She contends that this conduct deprived decedent of life and liberty without due process in violation of 42 U.S.C. Sec. 1983. She also asserts state law wrongful death and pain and suffering claims against the Board on a theory of respondeat superior based on the alleged negligence of its employees.
 
 
 5
 After initially denying defendants' motion for summary judgment, the District Court reconsidered its ruling and granted defendants summary judgment. The District Court found that, as a matter of law, defendants did not have a constitutional duty to protect decedent, that defendants did not affirmatively place decedent at risk of harm, and that decedent's death did not result from a constitutional violation. In addition, it found that Ohio law immunizes the Board from liability on plaintiff's state law claims. Plaintiff now appeals the District Court's order granting defendants' motion for summary judgment on all of her claims.
 
 II. Standard of Review
 
 6
 We review a grant of summary judgment de novo. Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir.1990). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). Because the facts of this case are undisputed, summary judgment is appropriate.
 
 III. Section 1983 Claim
 
 7
 In order to succeed on a claim under 42 U.S.C. Sec. 1983, plaintiff must show that defendants' constitutional violation caused decedent's injury. Plaintiff asserts three separate theories of liability under Section 1983. First, she claims that a "special relationship" between decedent and defendants gave rise to an affirmative duty on the part of defendants to protect decedent's constitutional rights and that defendants violated that constitutional duty, thereby causing injury to the decedent. Second, she asserts that the Board either chose or recklessly maintained a policy or custom with deliberate indifference to the constitutional rights of students having seizures on school buses and that custom, policy, or practice resulted in decedent's injury. Finally, she argues that the acts or omissions of the defendants constituted a state-created danger that caused decedent's injury.
 
 
 8
 A. "Special Relationship"
 
 
 9
 Plaintiff asserts that decedent was under the physical custody and control of the Board through its agent such that her freedom to act was restricted. These restrictions, along with state law duties of care regarding pupil transportation and decedent's medical condition, she claims, created a special relationship between decedent and the school district that gave rise to an affirmative duty on the part of the Board to protect the decedent from the consequences of a seizure while on board a school bus.
 
 
 10
 The constitutional basis for plaintiff's claim is the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, which forbids states from depriving individuals of life, liberty, or property without due process of law. Even though the Due Process Clause does not generally impose affirmative duties upon the state to protect those interests, in certain situations the Constitution does impose an affirmative duty of care and protection. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 198, 109 S.Ct. 998, 1004-05, 103 L.Ed.2d 249 (1989). See also Estelle v. Gamble, 429 U.S. 97, 104-05, 97 S.Ct. 285, 291-92, 50 L.Ed.2d 251 (1976) (holding that the state must provide prisoners with adequate medical care); Youngberg v. Romeo, 457 U.S. 307, 319, 102 S.Ct. 2452, 2459-60, 73 L.Ed.2d 28 (1982) (holding that the state must provide involuntarily committed mental patients with services necessary to ensure their reasonable safety).
 
 
 11
 In DeShaney, the Supreme Court held that an affirmative duty to protect arises "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." DeShaney, 489 U.S. at 200, 109 S.Ct. at 1005. Assuming arguendo that state regulations imposed a duty of care upon the Board, not all state created duties of care create a constitutional duty of care and protection. Id. at 202, 109 S.Ct. at 1006-07.
 
 
 12
 Although we have not addressed the question of whether compulsory attendance laws create a special relationship between school districts and their students that gives rise to an affirmative duty on the part of the school district to protect its students, a number of other circuits have held that they do not in the factual situations they have reviewed. See, e.g., Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 732 (8th Cir.1993); Maldonado v. Josey, 975 F.2d 727, 732-33 (10th Cir.1992), cert. denied, 507 U.S. 914, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993); D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1372-73 (3d Cir.1992) (en banc), cert. denied, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); J.O. v. Alton Community Unit Sch. Dist. 11, 909 F.2d 267, 272-73 (7th Cir.1990). These courts have recognized that unlike imprisonment or commitment to a mental institution, compulsory school attendance does not restrict a student's liberty such that neither the child nor his parents are unable to attend to the child's basic human needs. Despite mandatory school attendance laws, the parents, not the state, remain the child's primary caretakers. Dorothy J., 7 F.3d at 732; Maldonado, 975 F.2d at 732; D.R., 972 F.2d at 1371; J.O., 909 F.2d at 272.
 
 
 13
 We find that the reasons given in these cases for the absence of such a duty in the classroom where school attendance is mandatory are even more compelling in the context of a student's presence on a school bus. While on the school bus, decedent was even less affected by state restraints than she was in school. Plaintiff does not claim that state compulsory attendance laws or any state rule required decedent's presence on the bus. Although options may be limited for practical or financial reasons, parents can weigh for themselves the likely consequences of a seizure and the need for an alternative means of transportation.
 
 
 14
 Finally, plaintiff's argument that decedent's medical condition and the school district's knowledge of that condition created a special relationship between decedent and the school district misunderstands the nature of the special relationship theory. A special relationship can only arise when the state restrains an individual. Decedent's medical condition and its debilitating effects, however, were not restrictions imposed or created by the state. See DeShaney, 489 U.S. at 201 n. 9, 109 S.Ct. at 1006 n. 9.
 
 
 15
 Therefore, we hold that there was no special relationship between decedent and the school district that gave rise to a constitutional duty on the part of the Board to protect her from the consequences of a seizure while she was on the school bus. We do not hold that school districts have no duty of protection of students in other situations not before us. The nature and extent of such duties will have to be decided case by case.
 
 
 16
 B. State Established Policy, Custom, or Practice
 
 
 17
 Plaintiff argues that defendants adopted and maintained a practice, policy, or custom of reckless indifference to instances of children having seizures on school buses, and that that policy directly caused the constitutional deprivation of decedent's life. She also claims that defendants' failure to train school bus drivers and failure to institute emergency policies in the event of children having seizures amounted to a condonation of the policy and custom of having school bus drivers take children suffering seizures on its buses to their homes.
 
 
 18
 In Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720 (3d Cir.1989), cert. denied, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990), the court recognized that municipalities may be held liable for establishing and maintaining a custom, practice, or policy that causes constitutional deprivations when that custom, practice, or policy was established or maintained with recklessness or deliberate indifference to the consequences. Id. at 725. See City of Canton v. Harris, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 1204-05, 103 L.Ed.2d 412 (1989).
 
 
 19
 Thus, we must first address whether the Board maintained a policy, custom, or practice of taking children suffering from seizures on school buses home without medical intervention. In City of Canton v. Harris, the Supreme Court held that " '[m]unicipal liability under Sec. 1983 attaches where--and only where--a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." Id. at 389, 109 S.Ct. at 1205 (emphasis added) (quoting Justice Brennan's opinion in Pembaur v. Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality)).
 
 
 20
 In this case, the actions of the Board fail to meet the standard of City of Canton v. Harris of a deliberate choice by a policymaker. There is no evidence that the Board affirmatively adopted a custom, practice, or policy of taking children suffering from seizures home without medical intervention. The school bus driver's statement that on another bus a Board employee had merely taken the child home is not enough to establish a custom, practice, or policy. See Patzner v. Burkett, 779 F.2d 1363, 1367 (8th Cir.1985) (stating that an isolated incident of misconduct by an employee is not enough to establish a policy or custom); Bennett v. City of Slidell, 728 F.2d 762, 768 n. 3 (5th Cir.1984) (en banc) (suggesting that an isolated incident is not sufficient to show that a custom exists), cert. denied, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Furthermore, there is no evidence that the Board adopted a custom, practice, or policy of preventing school bus drivers from obtaining medical assistance for children suffering from seizures.
 
 
 21
 Additionally, the inadequacy of school bus driver training can form the basis of liability under Section 1983 only when that failure to train constitutes deliberate indifference to the rights of those students with whom the school bus driver comes into contact. See City of Canton, 489 U.S. at 389, 109 S.Ct. at 1205 (stating that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under Sec. 1983"). A showing of deliberate indifference requires a showing of " 'something more culpable ... than a negligent failure to recognize [a] high risk of harm.' " Black v. Indiana Area Sch. Dist., 985 F.2d 707, 712-13 (3d Cir.1993) (quoting Colburn v. Upper Darby, 946 F.2d 1017, 1025 (3d Cir.1991)).
 
 
 22
 Here, there is no evidence that taking children who are suffering from seizures home is a dangerous practice or that other children suffering from seizures experienced any adverse consequences as a result of being taken home without medical intervention. See Fiacco v. City of Rensselaer, New York, 783 F.2d 319, 331 (2d Cir.1986) (upholding a jury's finding of deliberate indifference upon a showing of multiple incidents of constitutional violations), cert. denied, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). Without notice that students suffering from seizures on school buses were harmed by school bus drivers' lack of "seizure management training," the Board's failure to conduct such a training program cannot rise to the level of deliberate indifference. See Patzner, 779 F.2d at 1367 (citing Herrera v. Valentine, 653 F.2d 1220, 1224 (8th Cir.1981)). Therefore, plaintiff is not entitled to prevail on the theory that the Board adopted a custom, practice, or policy with deliberate indifference to decedents' constitutional rights.
 
 C. State-Created Danger
 
 23
 Finally, plaintiff argues that defendants created the danger that resulted in decedent's death. Plaintiff claims that the defendants imperiled decedent by: (1) failing to provide bus drivers with a plan or policy concerning the management of emergencies on its buses; (2) instituting a policy of taking seizure victims home without any emergency medical intervention; (3) failing to maintain properly working communications devices on the bus; and (4) failing to communicate decedent's medical condition to her school bus driver.
 
 
 24
 Liability under the state-created danger theory must be "predicated upon the states' affirmative acts which work to plaintiffs' detriments in terms of exposure to danger." D.R., 972 F.2d at 1374. The evidence in this case, however, falls short of the demanding standard for constitutional liability. There is no evidence that the Board took any affirmative action that exposed decedent to any danger to which she was not already exposed. Decedent's medical condition, not the Board or its employees, created decedent's peril; defendants neither increased decedent's risk of harm nor rendered her more vulnerable to heart failure. Moreover, as discussed in Part III.B, there is no evidence that the Board had a policy of taking children suffering from seizures home without medical intervention. Therefore, we find no state-created danger in this case.
 
 
 25
 Because we have concluded that the record does not support a judgment against the Board, Charles Densmore, or Charles Sackett on a special relationship, a state established policy, custom, or practice, or a state-created danger theory, defendants are entitled to summary judgment on plaintiff's Section 1983 claim.
 
 IV. State Claims
 
 26
 Plaintiff also asserts state law claims against the Board for decedent's wrongful death and pain and suffering. Under Ohio law, political subdivisions generally are "not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." OHIO R EV.CODE Sec. 2744.02(A)(1). However, when a section of the Ohio Revised Code expressly imposes liability on a political subdivision, the political subdivision may be liable for damages. Id. at Sec. 2744.02(B)(5).
 
 
 27
 Plaintiff contends that O HIO R EV.CODE Sec. 4511.76 expressly imposes liability on the Board for failing to comply with department of education and department of public safety regulations regarding the operation of school buses. We agree with the District Court that it does not. Section 4511.99 provides for the only statutory remedy for violations of Section 4511.76 and that remedy is a criminal penalty. See Ohio Rev.Code Sec. 4511.99(C), (D). Thus, the Board's alleged violation of Section 4511.76 is not an exception to the general immunity of Section 2744.02.
 
 
 28
 Additionally, plaintiff argues that under O HIO R EV.CODE Sec. 2744.03(A)(5), which provides that a political subdivision is not immune when it acts with "malicious purpose, in bad faith, or in a wanton or reckless manner," the Board is not immune from liability. Because we have found that the Board is immune from liability under O HIO REV.CODE Sec. 2744.02(A)(1), there can be no liability on the part of the Board under Section 2744.03. Farra v. City of Dayton, 62 Ohio App.3d 487, 576 N.E.2d 807, 813 (1989). Therefore, the Board is entitled to judgment as a matter of law on plaintiff's state law claims.
 
 V. Conclusion
 
 29
 For the stated reasons, we AFFIRM the District Court's grant of summary judgment in favor of defendants.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 During her deposition, the school bus driver testified that she had previously accompanied Densmore on a bus route during which a student having a seizure was taken home without any medical intervention