NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 07a0182n.06

Filed: March 7, 2007

No. 06-1352

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

KENNETH BROOKS, SR., et al.,

 Plaintiffs-Appellants,

   v.

ALAN KNAPP, et al.,

 Defendants-Appellees.

On Appeal from the United
States District Court for the
Eastern District of Michigan

---

**Before:**   **BOGGS, Chief Judge, COOK, Circuit Judge, CARR, District Judge.**[*]

**James G. Carr, Chief District Court Judge**. Plaintiffs are surviving family members of

Brenda Hernandez, who was murdered by her husband, Gilbert Hernandez. Claiming that the

defendant police officers, members of the defendant Waterford Township, Michigan, police

department, failed to protect Mrs. Hernandez from the danger posed by Mr. Hernandez, plaintiffs

asserted three claims under 42 U.S.C. § 1983: 1) violation of Mrs. Hernandez's substantive due

process rights; 2) violation of familial association rights, as protected by the First and Fourteenth

Amendments; and 3) discrimination on the basis of gender [namely, unequal treatment of

---

[*]The Honorable James G. Carr, Chief Judge of the United States District Court for the Northern
District of Ohio, sitting by designation.

domestic violence victims] under the Equal Protection Clause of the Fourteenth Amendment. In addition plaintiffs asserted similar claims under Michigan laws.

The District Court granted the defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Plaintiffs appeal.

For the reasons that follow, we **AFFIRM**.

**Background**

Mrs. Hernandez first called the Township Police Department about threats from Mr. Hernandez, from whom she was estranged, on August 25, 2000. She was at a 7-Eleven store, afraid to return to her home because her husband had made a threatening phone call to her. The police came to the store and escorted Mrs. Hernandez home. The officers encouraged Mrs. Hernandez to stay that night with her parents.

A little over a month later, on October 2, 2000, Mrs. Hernandez applied for and received a court-issued Personal Protection Order (PPO) against Mr. Hernandez. The PPO provided that Mr. Hernandez was subject to arrest were he to violate the Order.

Thereafter, on October 20, 2000, Mrs. Hernandez filed for divorce. Mr. Hernandez was formally served with the PPO on October 27.

On October 29, 2000, Mrs. Hernandez made a second call to the police. Mrs. Hernandez told the police that Mr. Hernandez was threatening her and violating the PPO and had a gun. When the police did not respond quickly, Mrs. Hernandez fled from her home with her son. Mr. Hernandez followed them in his car. Because no one was at the residence when officers arrived, they returned to the station without taking any action.

On December 25, 2000, the police were called again to the Hernandez residence. Mr. Hernandez, who appeared visibly under the influence of drugs or drunk, had been threatening Mrs. Hernandez. Mrs. Hernandez's parents, the Brookses, had tried to intervene to enable their daughter to leave. In response, Mr. Hernandez had pushed Mrs. Brooks into a chair, and had begun kicking and beating Mr. Brooks. Neighbors called the police, telling them that Mr. Hernandez was violating the PPO. In the meantime, Mr. Hernandez fled by car. The police found Mr. Hernandez, stopped his vehicle, and arrested him for assault and violation of the PPO. Mr. Hernandez was released by the next morning.

On December 26, 2000, Mr. Hernandez moved out of the family residence. On December 28, 2000, Mr. and Mrs. Hernandez jointly revised the PPO in court, so that Mr. Hernandez could be at the house for supervised parental visits. Mr. Hernandez was not allowed to drink alcohol during these visits. On December 28th, the modified PPO took effect until October 2, 2001.

Mrs. Hernandez next called the police about a month later, on February 4, 2001. She told the police that Mr. Hernandez had called her and said, "Well we won't have to worry about who is awarded custody of our child because you will die bitch, plain and simple."

Defendant Officer Drumb went to Mrs. Hernandez' home. Mrs. Hernandez explained that Mr. Hernandez had repeatedly been calling her at work, her parents' home and her home, and on her cell phone. She also told Officer Drumb that Mr. Hernandez had a gun and frequently came to her home unannounced. Officer Drumb made note of the information, but made no attempt to find or arrest Mr. Hernandez or locate and seize his firearm.

On February 6, 2001, Mr. Hernandez voluntarily checked himself into Harbor Oaks Hospital as a psychiatric patient. He told the hospital he had a gun and wanted to kill himself. The hospital released him four days later, on February 10, 2001.

Later that same day, police came to the Hernandez residence after receiving a hang-up 911 call. Defendant Officers Drumb, Knapp, and Vanderbilt arrived to find Mr. Hernandez at the residence. He had physically assaulted Mrs. Hernandez and ripped the phone out of the wall when she had tried to call for help. Mr. Hernandez appeared drunk or on drugs.

The police officers detained Mr. Hernandez and put him in the back of a squad car. They did not handcuff Mr. Hernandez and allowed him to make phone calls from the car. The officers did not arrest Mr. Hernandez. Instead, they released him. After doing so, they told Mrs. Hernandez that an extra patrol car would be on duty to protect her. With this reassurance, Mrs. Hernandez stayed at her residence that night.

A few hours later, in the early morning on February 11, 2001, Mr. Hernandez broke into the house, shot and killed Mrs. Hernandez, and killed himself.

On September 4, 2003, the parents of Mrs. Hernandez, Kenneth and Darlene Brooks, filed suit individually and as representatives of Mrs. Hernandez's estate. The defendants moved for judgment on the pleadings on October 27, 2003, and plaintiffs filed a response on November 10, 2003. On August 13, 2004, Judge George Woods granted defendants' motion in part and denied it in part, ruling that the plaintiffs had pled all of the allegations adequately except the Michigan constitutional violation and one of the substantive due process claims. Judge Woods found the defendants had not met their burden of demonstrating qualified immunity.

Judge Woods retired shortly thereafter, and the case was transferred to Judge Lawrence Zatkoff on August 26, 2004.  On August 27, 2004, the defendants moved for reconsideration of the August 13th order.  Judge Zatkoff did not give plaintiffs the opportunity to respond to the motion to reconsider either in writing or orally.

On October 5, 2004, Judge Zatkoff granted the defendants' motion for reconsideration on all claims, thus dismissing them, except for an equal protection claim against Waterford Township.  The plaintiffs filed their own motion for reconsideration of Judge Zatkoff's ruling on October 19, 2004, which was denied.  On February 3, 2006, the plaintiffs voluntarily dismissed the remaining equal protection claim to enable the present appeal. They filed a timely notice of appeal on February 17, 2006.

**Standard of Review**

We review a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  The ruling is reviewed *de novo*, under the same standard applicable to a motion to dismiss under Rule 12(b)(6).  *Diegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001).

**I.       42 U.S.C. § 1983 Substantive Due Process Claim**

To prevail on their claim under 42 U.S.C. § 1983, the plaintiffs must show defendants: 1) acted under color of state law;  and 2) deprived plaintiff's decedent of rights provided by the United States Constitution.  *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002).

In the present case, the  police officers were acting in their official capacity and hence under color of law.

Plaintiffs argue that the defendants deprived Mrs. Hernandez of substantive due process – the right to life and liberty – when they allowed Mr. Hernandez to remain free while having access to a gun.

The Supreme Court has held that the Due Process Clause generally does not impose affirmative duties on the state to protect the interests of individuals. *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 198 (1987). In *DeShaney*, the Court held that state officials were not liable for injuries resulting from violent acts by third parties. *Id.* at 196 ("[O]ur cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.").

The Sixth Circuit has endorsed two exceptions to *DeShaney* whereby state actors have an affirmative duty of care and protection - where they have a "special relationship" with an individual, or where their conduct toward the individual results in a "state-created danger." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).

The "state-created danger" exception applies when the state either plays a role in creating a danger to an individual or renders an individual more vulnerable to a danger. *Kallstrom,* 136 F.3d at 1066. In this case, the parties concur that plaintiffs base their claims on the officers' failure to take more effective steps to incapacitate Mr. Hernandez, thereby creating a danger of death or serious injury that otherwise would not have existed. Plaintiffs' "state-created danger" claim alleges that the failure of the officers to arrest Mr. Hernandez "emboldened" Mr. Hernandez to return to the house and kill Mrs. Hernandez, which also increased Mrs. Hernandez's vulnerability to harm.

An individual's "interest in preserving her life is one of constitutional dimension." Nishiyama v. Dickson County, 814 F.2d 277, 280 (6th Cir. 1987) (en banc). Individuals have, accordingly, "a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity." *Doe v. Claiborne County*, 103 F.3d 495, 507 (6th Cir. 1996). Under *DeShaney* a state agent is liable for his or her acts that expose an individual to harm that otherwise would not exist. *Jones v. Union County, Tennessee*, 296 F.3d 417, 428 (6th Cir. 2002) ("state-created danger" arises when the state affirmatively acts to expose an individual to potential danger); *Gazette v. City of Pontiac*, 41 F.3d 1061, 1065 (6th Cir. 1994).

The facts of this court's decision in *Kallstrom, supra*, exemplify a "state-created danger." In that case, three undercover Columbus, Ohio, police officers had been part of an investigation of a large, violent gang. After charges were brought against eight members of the gang, defense counsel requested and received personal information from the city about the three officers, including bank account information, social security numbers, personal responses during a polygraph examination, copies of drivers licenses, and home addresses. The lawyer, in turn, gave that information to the defendants in the criminal case.

Suing under § 1983, the officers claimed that disclosure of such highly personal and confidential information affirmatively placed them in danger. The Sixth Circuit agreed, and held that the city had violated the officers' substantive due process right to "personal security and bodily integrity." *Kallstrom*, 136 F.3d at 1063, 1067. The city had placed the officers in "'special danger' by substantially increasing the likelihood that a private actor would deprive them of their liberty interest in personal security." *Id*. at 1067.

Under *Kallstrom,* a court asks whether the defendant, while aware of the risk being created, took affirmative action that placed the victim in "special danger." *Id*. at 1066. Stated otherwise, the issue is whether the officers did anything "affirmative" to "embolden" the person causing harm to another. *Jones v. Reynolds,* 438 F.3d 685, 703 (6th Cir. 2006) ("[W]here officers enable or embolden a private actor to drive dangerously, they commit an affirmative act for state-created-danger purposes.").

Failure to act, as opposed to affirmative conduct, does not cause a "state-created danger" to arise. *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003); *Sargi v. Kent City Board of Education*, 70 F.3d 907, 912-13 (6th Cir. 1995).

Officer Drumb's failure to do anything other than to detain Mr. Hernandez briefly on the night before he killed Mrs. Hernandez is not actionable. Here, as in *May v. Franklin County Commissioners*, 437 F.3d 579, 584-86 (6th Cir. 2006), officers who merely depart from the scene of a domestic violence call without having taken steps to reduce the risk of harm cannot be held liable under the "state-created danger" exception to *DeShaney*. Instead, they must have done something affirmative to increase the harm beyond that of which they were already cognizant.

This is so, even where officers can be seen not only to have ignored or disregarded the risk of injury, but to have condoned it. In *Jones, supra,* police officers arrived on the scene shortly before the start of a drag race. One of the officers told one of the drivers to go ahead and have the race. A spectator was killed when a driver lost control of his car. The district court dismissed the suit brought on behalf of the victim's estate, which alleged, *inter alia*, that the officers were culpable for having created a "state-created danger."

Affirming the dismissal, this court held that the officers' acquiescence in the drag race had not amounted to an affirmative act giving rise to a state-created danger. The decedent had, by being and remaining a spectator, already exposed herself to the risk of injury. The officers' action or inaction, the court held, had not made her "more vulnerable" to the risk. 438 F.3d at 691.

In the instant case, plaintiffs claim the defendant officers increased the decedent's vulnerability to danger when they failed to arrest Mr. Hernandez. Plaintiffs also point out that Mrs. Hernandez relied on the officers' assurances that additional patrols would be provided and consequently remained at her home on the night before her death. But, as the Supreme Court stated in *DeShaney*, no "affirmative duty to protect arises . . . from the State's . . . expressions of intent to help" an individual at risk. 489 U.S. at 200; *see also Bright v. Westmoreland County*, 443 F.3d 276, 284 (3d Cir. 2006) (officers who, three weeks before a probation violator killed a child, had assured the child's father that the probation violator would be arrested held not liable under state-created danger doctrine). The affirmative assurance of additional patrols was not sufficient to increase Mrs. Hernandez's general vulnerability to harm. Consequently, plaintiffs' state-created danger claim, either based on the officers' failure to arrest Mr. Hernandez or their assurances of additional patrols to Mrs. Hernandez, fails.

II.     **Right to Familial Association**

The Sixth Circuit has briefly examined, in dicta, the right to familial association in the context of a § 1983 claim for deprivation of the parent-child relationship. *Kottmyer v. Maas,* 436 F.3d 684, 689 (6th Cir. 2006); *Purnell v. City of Akron*, 925 F.2d 941, 948 n.6 (6th Cir. 1991).

We express no views about that dicta: the present claim for familial association fails in any event because Mr. Hernandez, not the officer defendants, killed the victim. *See Kottmyer*, 436 F.3d at 690 ("These decisions [re. a right to familial association] rely on the notion that parents have a constitutionally protected liberty interest in the companionship and society of their children, which parents are permanently deprived of when their children are killed *by a state actor*.") (emphasis supplied).

The officers, furthermore, have qualified immunity from the familial association claim. A reasonable officer would not have known he was putting the familial rights of Mrs. Hernandez's parents and child at risk as a matter of law when he declined, after responding to the domestic violence call on February 10, 2001, to take action to incapacitate Mr. Hernandez. *See generally Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (officers have qualified immunity if the officer "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

III.    **Equal Protection Claim**

To establish an equal protection claim under § 1983, plaintiffs must show the decedent was a member of a protected class and she was intentionally and purposefully discriminated against because of her membership in that class. *Boger v. Wayne County*, 950 F.2d 316, 325 (6th Cir. 1991). The class in this case is victims of domestic violence, or female victims of domestic violence. The alleged unequal treatment is the failure to arrest perpetrators of domestic violence, thereby placing victims at risk of harm.

States may not discriminate in providing police protection. *Hakken v. Washtenaw County*, 901 F. Supp. 1245, 1249 (E.D. Mich. 1995); *see also Deshaney*, 489 U.S. at 197 n.3 ("The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause."); *Stevens v. Trumbull County Sheriffs' Dep't*, 63 F. Supp. 2d 851 (N.D. Ohio 1999).

Plaintiffs fail to state Mrs. Hernandez was intentionally and purposefully discriminated against because of her status as a domestic violence victim. Plaintiffs' equal protection claim centers around an allegation that Waterford Township had a policy or custom "to provide less protection to female victims of domestic violence than to victims of non-domestic attacks." Plaintiffs' complaint further alleges this policy, custom, and practice of gender discrimination was the "motivating factor behind the disparate treatment of female domestic violence victims by Officer Alan Knapp, Officer G. Drumb, [and] Officer Vanderbilt." The alleged disparate treatment was a failure to provide adequate police protection, failure to arrest Mr. Hernandez, and the failure to properly enforce the original and modified PPOs.

Plaintiffs voluntarily dismissed their equal protection claim against Waterford Township, in order to directly and immediately appeal Judge Zatkoff's Opinion on Defendants' Motion for Reconsideration.

The complaint alleges a discriminatory policy or custom within the Township, and that this policy led the individual officers to discriminate against Mrs. Hernandez. The complaint, however, does not sufficiently allege that Officers Knapp, Drumb, and Vanderbilt, in their individual capacity, acted in a discriminatory manner toward Mrs. Hernandez, for any reason.

11

Plaintiffs have not sufficiently alleged individual acts of discrimination, let alone discrimination based on Mrs. Hernandez's membership in a particular class. *Boger v. Wayne County*, 950 F.2d at 325. For this reason, the equal protection allegation against the police officers in their individual capacities fails.[1]

**AFFIRMED**.

---

[1]This court has indirectly acknowledged claims for discrimination against domestic violence victims as a protected class. *See Jones*, *supra.*, 296 F.3d at 427; *Blankenship v. City of Cleveland*, 1998 WL 152774, *1 (6th Cir.).