(No. 34980.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* TED GRODKIEWICZ, Plaintiff in Error.

*Opinion filed March 20, 1959.*

HOMER C. GRIFFIN, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, WILLIAM H. SOUTH, and FRANCIS X. RILEY, of counsel,) for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

After a trial by the criminal court of Cook County, the defendant, Ted Grodkiewicz, was found guilty of the crime of receiving stolen property and sentenced to serve a term of not less than four nor more than ten years in the penitentiary. The indictment contained three counts. The first charged John Williams, a brother-in-law of defendant, with the crime of larceny; the second charged defendant and Rodge Taylor with being accessories after the fact to the crime of Williams; and the third accused defendant and Taylor of receiving stolen property.

Both Williams and Taylor entered pleas of guilty to the respective crimes with which they were charged. This writ of error reviews only the judgment and sentence of defendant, who contends that the evidence did not establish his guilt; that he was deprived of certain constitutional rights and denied a fair trial; and that the judgment and sentence pronounced was the result of passion and prejudice.

The evidence for the People established that on Sunday, October 21, 1956, at about 7:30 P.M., two Chicago police officers were driving in an easterly direction on Fifty-first Street between South Wentworth Avenue and South La Salle Street, and noticed a large semi-trailer truck parked in the alley at the rear of 5103½ South Wentworth, a small tailor shop and cleaning establishment. The presence of the truck at that hour on Sunday aroused their suspicions, so they drove around the block and returned to investigate. As one of the officers approached the truck, he could see from the light inside the doorway of the premises, that the rear doors of the trailer were open; that unloading operations were in progress; that, although it was dark, the truck and trailer were unlighted; and that the men later identified as Williams and defendant were in the trailer, and the man later known as Taylor was standing on the ground at the rear of the truck near the doorway. One of the officers asked, "What is this, a hot load

of merchandise?" and Taylor replied, "Yes." All three men were then placed under arrest.

The officers entered the shop and found a large number of cartons, similar to those remaining in the trailer, piled in one corner, many of which were stenciled with the name "Harrison Wholesale Company." All the merchandise from the building and the trailer was taken to the 18th district police station. The following day, Theodore Bear, treasurer of the company, positively identified the merchandise as the property of that corporation, from serial numbers and the stenciled name of the company appearing on the cartons, and took an inventory thereof.

The merchandise in the cartons consisted of such items as electric clocks, lamps, heating pads, drills, juicers, mixers, and deep fryers. Bear testified that he had been connected with the business for 32 years and had been familiar with prices for over 20 years; and that the entire inventory had a fair, reasonable market value of $21,312.44 as of October 21, 1956. He also testified that the tractor and trailer were the property of the company; that the trailer had been loaded with the merchandise in connection with a change in business location and had been driven away from the company premises.

John Williams, who testified for the defendant, stated that he was a truck driver employed by the Okay Motor Service; that he made deliveries of beer, from breweries in Milwaukee and Waukesha, Wisconsin, to distributors in Chicago; that the defendant was his brother-in-law and lived with him and his family; and that on occasion defendant had accompanied him on some of these trips and had helped him unload beer. Williams further testified that on October 21 he had asked the defendant to help him deliver some "stuff;" that they drove the truck to an address on South State Street where the witness phoned Rodge Taylor from an undertaking establishment and told him where to meet them; that the witness and defendant

then drove to a tavern at Fifty-first and La Salle streets where they had a drink; that Taylor joined them there and drove the truck while witness and defendant followed in Taylor's car; that when they arrived at the Wentworth Avenue address, Taylor parked the truck in the alley and Williams and defendant entered the shop through the front door; that they could see it was a cleaning establishment; that Williams then broke the lock on the back of the trailer, and they proceeded to unload packages from the trailer into the shop; and that during these operations the alley was in darkness and there were no lights on the truck. On cross-examination the witness first admitted that they were being very quiet. Then he stated that he made a lot of noise in knocking the lock off the trailer, and later he said that the lock had already been knocked off when he and his brother-in-law arrived. He freely admitted stealing the merchandise and truck but stated that he did not tell defendant that the merchandise did not belong to him and was not properly in his custody and control.

Defendant denied knowledge that the truck or its contents were stolen property. He stated that he had previously helped his brother-in-law unload merchandise on four or five occasions; that he was aware of the fact that the merchandise was being unloaded in a cleaning establishment; that he did not know how the lock on the truck was broken, though he heard the noise; and that he did not ask about the contents of the cartons although he realized they did not contain beer. He corroborated Williams as to the darkness which prevailed while the unloading operation was in progress.

Defendant contended principally that there was no proof that he knew the merchandise was stolen. This, of course, is one of the essential elements of the crime charged and must be proved beyond a reasonable doubt. (*People* v. *Mowry*, 6 Ill.2d 132; *People* v. *Piszczek*, 404 Ill. 465.) However, guilty knowledge and intent to deprive the owner

from again possessing the property are rarely susceptible of direct proof and such elements of the crime may be inferred from all the attendant facts and circumstances, even though positive proof is lacking. (*People* v. *Lindstrom*, 9 Ill.2d 616; *People* v. *Mowry*, 6 Ill.2d 132.) Guilty knowledge may be established by proof of circumstances which would induce belief in a reasonable mind that the property had been stolen and by the receipt of such property by the accused without inquiry as to its source or the title of the one from whom it was received. (*People* v. *Mowry*, 6 Ill.2d 132; *People* v. *Holtzman*, 1 Ill.2d 562.) Knowledge of the theft need not be that actual or positive knowledge which one acquires by personal observation of the fact. It is sufficient if the circumstances accompanying the transaction were such as to make the defendant believe the goods had been stolen. *People* v. *Holtzman*, 1 Ill.2d 562, 571.

In order to sustain a conviction for receiving stolen property, the proof must show "(1) that the property has, in fact, been stolen by a person other than the one charged with receiving it; (2) that the one charged with receiving it has actually received the property or aided in concealing it; (3) that the receiver knew the property was stolen at the time he received it, and (4) that he received the property for his own gain or to prevent the owner from again possessing it." (*People* v. *Mowry*, 6 Ill.2d 132, 136; *People* v. *Piszczek*, 404 Ill. 465, 470.) It cannot be seriously contended that the evidence fails to establish the first two elements of the crime. We conclude that the other components were likewise proved beyond a reasonable doubt by the facts and circumstances in evidence.

It is undisputed that defendant accompanied his brother-in-law on a Sunday at 7::30 P.M. to unload a trailer of merchandise, after dark, at a cleaning establishment where such merchandise would not ordinarily be delivered. They did not proceed directly to the place of destination, but

made telephone contact with Taylor after which the latter drove the truck, and defendant and Williams followed in his car. Defendant and his brother-in-law entered the front door of the place of business and saw that it was a cleaning and tailor shop. They then proceeded to the rear of the premises where the lock on the trailer was broken, and assisted in unloading a large quantity of merchandise which could have no reasonable relation to the business conducted on the premises.

Meanwhile, the defendant made no inquiry concerning the merchandise, its source, or the circumstances of its delivery, even though the transaction was not in the usual course of business. His lack of curiosity does not inspire belief in his innocence.

The trial court's finding that the defendant aided in concealing the property with knowledge that it was stolen is fully supported by the evidence and the authorities cited. The same facts and circumstances amply sustain the conclusion that he was acting for his own gain or to prevent the owner from again possessing the merchandise.

Defendant contends that his constitutional rights were violated by the sentence imposed since the court announced that he and his brother-in-law were "equally guilty." He urges that the legislative enactments concerning receiving stolen property and being an accessory after the fact conclusively indicate that a defendant convicted under either of these statutes should not receive the same punishment as a person convicted of larceny, and that, in consequence of the court's statement, he has been denied equal protection of the law. He further contends that he was placed in double jeopardy because the State did not elect between counts two and three and the trial court failed to specify the count or charge under which the defendant was being sentenced. These contentions are without merit.

The statement by the trial court that defendant and his brother-in-law were "equally guilty" was gratuitous. The

court did not find that a defendant convicted of receiving stolen property is subject to the same sentence as one convicted of larceny in the same transaction. In the case at bar, Williams was convicted of larceny and was sentenced for that offense, while the defendant was convicted of receiving stolen property and the sentence imposed upon him was within the minimum and maximum limits fixed by statute for that crime. (Ill. Rev. Stat. 1955, chap. 38, par. 492.) There was no denial of equal protection of the law.

Distinct offenses may be charged in the same indictment when they grow out of the same transaction, and no election is required except when the offenses charged in different counts are actually distinct from each other and do not arise out of the same transaction. (*People* v. *Mulrenin*, 415 Ill. 123.) The fact that defendant was also charged with being an accessory after the fact in connection with the same transaction does not constitute double jeopardy.

Defendant argues that he did not receive a fair trial and contends that the State's Attorney made certain remarks during the trial and in the closing argument which were prejudicial and contrary to the law and the evidence. For example, complaint is made that the State's Attorney remarked that defendant was entitled only to a fair trial and not to sympathy. It is also urged that the argument for the People was inaccurate in that the State's Attorney stated, or rather inferred, that it was the defendant who said that the goods were "hot," and that the prosecutor misstated the law when he said that defendant was required to explain his recent possession of the property to the court.

This case was tried before the court and in such a hearing "the court is supposed to disregard all evidence heard except that which is competent and relevant, and is considered to possess such legal discernment when determining the degree of punishment." (*People* v. *Grabowski*, 12 Ill.2d 462, 467.) This rule applies to arguments and remarks

of counsel. Unless it affirmatively appears that the court was misled or improperly influenced by such remarks and that they were productive of a judgment and sentence contrary to the law and the evidence, we will not reverse. If we assume the impropriety of the remarks of counsel, there is nothing in the record to suggest that the trial judge was misled thereby or that he lacked the legal discernment to render a judgment and sentence strictly in accord with the law and the evidence.

Finally, defendant urges that the sentence was the result of passion and prejudice and that the court found him guilty and sentenced him on his record and not on the evidence adduced at the trial. The judgment is fully supported by the evidence, and there is no basis for this contention. In passing judgment upon the defendant, the trial judge had the benefit of a pre-sentence investigation which showed that defendant had a prior criminal record including a conviction with a penitentiary penalty. The sentence in the case at bar is within the minimum and maximum limits fixed by the legislature for the particular offense, and is within the discretion of the trial court. *People* v. *Smith,* 14 Ill.2d 95.

We will not interfere with the sentence of the trial court unless there has been an abuse of discretion, or the prisoner has been materially prejudiced by the procedure adopted in conducting the inquiry prescribed by statute. (Ill. Rev. Stat. 1955, chap. 38, par. 802; *People* v. *Smith,* 14 Ill.2d 95; *People* v. *Schmidt,* 10 Ill.2d 221.) The punishment inflicted in this case is justified under the circumstances and, there being no showing of an abuse of discretion or prejudicial procedure, the judgment of the criminal court will be affirmed.

*Judgment affirmed.*