THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARRY J. MEIER, Defendant-Appellant.

(Nos. 73-333, 73-334 cons.;

Second District (2nd Division)—July 3, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

William J. Cowlin, State's Attorney, of Woodstock, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant, Harry Meier, was indicted by the McHenry County grand jury on six counts of indecent liberties with a child, involving three male children. Three of the counts charged indecent liberties by means of lewd fondling as to each of the children, and three of the counts charged indecent liberties by means of an act of deviate sexual conduct as to each of the children. Defendant, at a bench trial, was found not guilty as to the three charges involving deviate sexual conduct and one of the lewd fondling charges. He was found guilty on the two remaining charges of indecent liberties by means of lewd fondling and sentenced to concurrent terms of imprisonment of 4 years to 4 years and 1 day. Defendant contends on appeal that the findings of guilty on the lewd fondling charges are legally inconsistent with the finding of not guilty as to the other lewd fondling charge and that he is thereby entitled to a new trial on those two charges, that he was denied a fair trial when the court allowed improper hearsay testimony, and that he was denied his constitutional right to a jury trial.

At trial, Gerald Tavenner, who had previously pleaded guilty to these charges, testified first. He met defendant, whom he had known previously, on August 14, 1972. Tavenner and defendant may have seen Scott Sagel, Lawrence Berent, and Bruce Wardell, the three boys here involved, on that date, but he did not recall that any activities took place on that date. The next morning, August 15, 1972, Tavenner and defendant met the three boys at the McHenry train station and took them for a ride in Tavenner's car. They decided to go fishing so the boys were driven home to pick up fishing gear. They fished for 1 to 2 hours and then took the

boys home. After lunch they took the boys swimming in a pool at Tavenner's apartment complex. After swimming, the group went into Tavenner's apartment, undressed in the bathroom and proceeded nude to the living room. The boys had removed their swimming trunks by themselves. After a while, defendant took the oldest boy (Wardell) into the bedroom for 15 minutes with the door shut. When they came out of the bedroom, both had erections. Shortly thereafter, defendant went into the bedroom with the small blond boy (Sagel) and shut the door. After about 15 minutes both came out with erections. After a short time the tallest boy (Berent) went into the bedroom with defendant for about 15 minutes. Both came out with erections. Then Tavenner took the oldest boy into the bedroom when they engaged in mutual fondling and looking at "girl magazines." After about 15 minutes the other came into the bedroom and looked at the magazines for a few minutes. Then they all returned to the living room, still unclothed, where defendant was touching the boys on their penes for about a minute. Then they all got dressed and the boys were taken home.

Bruce Wardell testified as to the fishing and swimming on August 15. After swimming they went to the apartment where he removed his own swimming suit. The others took off their swimming suits. Defendant tried to pull Wardell into a room. Wardell resisted and Berent helped him pull away. Then Wardell sat down. Next defendant took Berent into the room. When these two came out 10 to 15 minutes later, Wardell noticed nothing unusual about either's appearance. Sagel also went into the room with defendant. Wardell went into the room with Tavenner and looked at "playboy books." On August 14, 1972, a similar fishing and swimming scenario took place substantially as detailed above for August 15, 1972. At the apartment on August 14 defendant put his mouth on Wardell's penis, while in the bedroom. Defendant did nothing to the other two boys on August 14.

Scott Sagel testified that after fishing and swimming on August 15, 1972, the group went to Tavenner's apartment where defendant told them to take off their pants, which they did. Defendant tried to pull Wardell into the bedroom. Defendant and Wardell were wrestling. Defendant grabbed Wardell's penis and Wardell pulled off defendant's wig. Wardell went into the room with defendant on August 15, but he refused to go into the room on August 14. After Wardell and defendant came out of the room (it is not clear what date is being referred to), having been in there about an hour, Sagel went in. Then defendant put his mouth on Sagel's penis. Then Sagel left the room and Berent went in. Defendant told the boys to take off their swimming suits when they got

to the apartment. He started pulling the suits off and fell down. Defendant kissed Sagel on the forehead on August 14.

Lawrence Berent could not remember the exact date in August 1972 when the instant events transpired. The three boys saw defendant and Tavenner on two successive days. Defendant and Tavenner told the boys to take their clothes off at the apartment. Then defendant took Berent into the bedroom and defendant put his mouth on Berent's penis. The other two boys also went into the bedroom with defendant, with the door shut. At the apartment on this second day, defendant took off Berent's swimming trunks. When Berent got home he told his mother and sister what had happened.

Ellen Berent, the mother of Lawrence Berent, testified that on the afternoon of August 15, 1972, her son told her about going to an apartment with two men and that one of the men put his mouth on Lawrence's penis and the other man showed him "some dirty books of girls."

Robert Krantz, a McHenry policeman, testified that defendant voluntarily admitted putting his mouth on the boys' penes. Robert Zujewski, another officer, corroborated this testimony.

Defendant also testified. He testified as to meeting the boys at the train station on August 14, 1972, and the subsequent fishing and swimming. While in the pool, they were all grabbing each other in the genital area and under the arms, wrestling. At the apartment all removed their swimming suits at Tavenner's suggestion, who said he did not want the new carpeting to get wet. They were all playing cards in the nude and then, at the boys' suggestion, they wrestled. Defendant grabbed Wardell, who had defendant in a scissors hold with his legs around defendant's neck. Defendant was trying to release himself from Wardell by biting him on the stomach. Then Wardell pushed his penis into defendant's mouth. Defendant told Wardell that was an accident and that he did not "usually do those things and would he please excuse me." Wardell apologized. While they had been wrestling, defendant's wig had fallen off. Defendant suggested that the two of them go into the bedroom to discuss what Wardell had mentioned about "playing around in the hayloft" with his cousin. Wardell declined and one of the other boys volunteered to go into the bedroom with defendant. In the bedroom they talked about sports, school, girls, and the sexual activities of the boy, namely mutual masturbation with relatives. Defendant took each of the boys into the bedroom "to find out what their feelings were on these sort of things."

Defendant further testified that on August 15, 1972, they again met the boys and went fishing and swimming. At the pool they were wrest-

ling and trying to remove each other's swimming suits. Then at the apartment the boys took their swimming suits off in the bathroom. The three boys then sat on the couch and fondled each other's genitals. Tavenner and Wardell went into the bedroom for 20 to 25 minutes and when they returned Wardell's hand was covered with semen. The other two boys went into the bedroom with Tavenner and defendant this day. Defendant took Sagel into the bedroom where they laid on the bed and talked about baseball. Defendant rubbed Sagel's stomach. Sagel put his arm around defendant and they talked about girls and sexual relationships. Then defendant took the heaviest of the three boys into the bedroom. They talked about fishing, swimming and cassette recorders. Then everyone put their clothes on and they took the boys home. Defendant admitted that he had touched the genitals of all three boys in the pool on August 14. He admitted that he accidentally put Wardell's penis into his mouth on August 14. On August 15 defendant did not put anyone's penis into his mouth, but he did touch the stomach area of all three boys while the boys were nude. The boys did not have erections at this time.

The issues on appeal are:

1. Were the convictions on counts of indecent liberties by means of lewd fondling as to two of the boys involved here legally inconsistent with the finding of not guilty on the same charge as to the third boy involved?

II. Did the trial court deny defendant a fair trial by considering improper hearsay testimony?

III. Was the defendant denied his constitutional right to a jury trial?

## I

██ Defendant contends that the verdicts in this case are legally inconsistent. He bases this contention on the fact that he was acquitted on one indecent liberties/fondling count while convicted on the other two. Each of the three counts involved a different boy. The cases cited by defendant, *People v. Hairston*, 46 Ill.2d 348, and *People v. Pearson*, 16 Ill.App.3d 543, are immediately distinguishable, as they involved defendants charged with different offenses arising out of the same act directed toward a single victim. However, *Hairston* is helpful in stating that so far as the law is concerned there is no inconsistency in verdicts of acquittal and conviction upon charges of crimes composed of different elements, yet arising out of the same factual context, logical inconsistency not being synonymous with legal inconsistency. *Hairston* found no legal inconsistency in acquitting the defendant of murder and

attempted murder on an accountability by means of solicitation theory and convicting him of solicitation to commit those crimes. If such a situation does not rise to the level of a legal inconsistency, then certainly the instant situation is not a legal inconsistency because here there were completely separate offenses directed at three distinct victims.

In addition, it is noted from a review of the record that the evidence of defendant's guilt as to all three of the boys is overwhelming. The fact that defendant was acquitted as to one of the boys was sheer good fortune. Given the state of the record, it would be absurd to allow defendant to postulate legal inconsistency when the trial court simply found in his favor on one count. There were three distinct offenses involved here and defendant should not be heard to complain because he was acquitted as to one.

## II

Defendant argues that the following testimony by Ellen Berent, mother of Lawrence Berent, which was not objected to at trial, was improper.

> "Q. [Mr. Kilduff] All right. What did you ask him and what did he say?
>
> A. [Witness] I asked him what happened. He said these two men picked them up, said they were going to take them fishing. Took them to their apartment and there they took advantage of them."

The testimony continued as follows:

> "Q. What did he say to you? If you don't remember, just say you don't.
>
> A. He said one man put his mouth on his penis and another man showed him some dirty books of girls."

It is axiomatic that objections not made at trial will not be considered on appeal. Defendant urges an exception to this general rule under Rule 615, which states that plain errors affecting substantial rights may be noticed on appeal though they were not brought to the attention of the trial court. (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a).) Rule 615 is not applicable in the instant case. Defendant was acquitted on the three counts charging indecent liberties by an act of deviate sexual conduct. " 'Deviate sexual conduct', for the purpose of this Article, means any act of sexual gratification involving the sex organs of one person and the mouth or anus of another." (Ill. Rev. Stat. 1973, ch. 38, par. 11—2.) Ellen Berent's testimony only referred to oral-genital contact of the defendant and her son. As defendant was acquitted on the three counts

involving such conduct, it is apparent that Ellen Berent's testimony did not harm defendant.

■■ In addition, as to improper testimony at a bench trial, it is presumed that the trial judge only considered competent evidence. (*People v. Robinson*, 30 Ill.2d 437.) There will be no reversal unless it affirmatively appears that the court was improperly influenced by such testimony. (*People v. Grodkiewicz*, 16 Ill.2d 192.) As discussed above, it is clear that the court in the instant case was not so influenced.

## III

Finally, defendant argues that he was denied his right to a jury trial. The basis of his argument on this point is that the record does not indicate that he was informed of his right to a jury trial. The common-law record does indicate that defendant appeared in court on April 9, 1973, with his privately retained counsel and waived his right to trial by jury. The common-law record further indicates that on the same day defendant signed and filed a jury waiver form.

> "Supreme Court Rule 321 provides there is no distinction between the common law record and the report of proceedings for the purpose of determining what is properly before the reviewing court. A common law record containing a recitation of the court's admonition to a defendant entering a plea of guilty was held sufficient in *People v. Stack* (1945), 391 Ill. 15, 62 N.E.2d 807." *People v. Bowers*, 4 Ill.App.3d 453, 456.

While *Bowers* did involve a docket entry indicating that the court spoke to the defendant about a jury waiver, *People v. Richardson*, 32 Ill.2d 497, states that whether there has been a knowing and understanding jury waiver depends on the particular situation of each case and there is no precise formula for a valid jury waiver. In *Richardson*, the record indicated that defendant appeared with counsel. Counsel demanded a bench trial. There was a short recess and then the parties returned to court where the State's attorney said that the defendant had executed a jury waived. The judge accepted the jury waiver. The court in *Richardson* mentioned that the defendant had the opportunity to discuss the jury waiver with his attorney during the recess. There is nothing which indicates that such a discussion occurred. The *Richardson* court went on to say:

> "Merely because the court did not at length discuss the consequences of the jury waiver does not necessarily require a holding that the waiver was not understandingly made. (*People v. Nelson*, 17 Ill.2d 509, 511.) While the trial court might well have dwelt

at more length on this matter in complying with its duty to insure that the jury waiver was expressly and understandingly made (*People v. Surgeon,* 15 Ill.2d 236), we believe that this record indicates that defendant understandingly waived his right to trial by jury." 32 Ill.2d 497, 500.

In *People v. Sailor,* 43 Ill.2d 256, the record indicated that the defendant's counsel in the presence of the defendant and without objection, waived a jury trial. The defendant was held bound by that waiver. The supreme court said that the trial court could rely on the professional responsibility of the attorney to be waiving a jury only upon the intelligent consent of his client. Finally, the court in *Sailor* said that the defendant could not complain of an alleged error by his behavior and that of his attorney. In the instant case defendant too should not be heard to complain where he waived a jury with counsel present and signed a jury waiver. See also *People v. Murrell,* 60 Ill.2d 287, 326 N.E.2d 762; *People v. Green,* 27 Ill.App.3d 142, 326 N.E.2d 458.

Finally, defendant cites *People v Gaston,* 132 Ill.App.2d 900, *People v. Spates,* 132 Ill.App.2d 902, and *People v. Clay,* 19 Ill.App.3d 296, in support of his argument. These cases are readily distinguishable. In *Clay,* the defendant was not represented by counsel. In *Gaston* and *Spates,* the record was completely silent on the question of jury waiver except for a written waiver.

■■ Defendant was represented by counsel. He makes no contention on appeal that his counsel was incompetent. Undoubtedly counsel knew of the right to trial by jury and informed defendant of such right. Defendant does not contend that he did not know of his right to a jury trial.

"It may well be that a defendant who has been informed by his counsel or is otherwise aware of his right to trial by jury may intelligently waive that right without further admonishment from the court. However, consistent with the approach which has been taken with regard to entry of a plea of guilty, the better practice is for the court to advise the defendant on his right to jury trial before accepting a waiver." (ABA Standards Relating to Trial by Jury, sec. 1.2(b), Commentary, at 38 (Approved Draft (1968).) We agree that the better practice would be for the court to specifically advise defendant of his right to a jury trial, on the record. However, given the facts of the instant case there is no reason for a reversal.

For the foregoing reasons the judgment of the Circuit Court of McHenry County is affirmed.

Judgment affirmed.

RECHENMACHER, P. J., and T. Moran, J., concur.