**Andreas SARANTAKIS, a/k/a Andy Sarantakis, Plaintiff,**

v.

**VILLAGE OF WINTHROP HARBOR, a municipal corporation, Lieutenant Robert Commons, and Mayor Michael Lambert, Defendants.**

No. 97 C 0562.

United States District Court,
N.D. Illinois,
Eastern Division.

June 26, 1997.

Bruce Scott Kreisman, James G. McConnell, Edwin Michael Plaza, Cindy Gale Fluxgold, Louis Samuel Goldstein, Maxwell Griffin, Jr., Michael James Baron, Goldstein & Fluxgold, Ltd., Chicago, IL, for Plaintiff.

William W. Kurnik, Michelle Jeannette Hirsch, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge.

Plaintiff, Andreas Sarantakis, filed a twelve–count complaint against defendants, Village of Winthrop Harbor ("Village"), Lieutenant Robert Commons ("Commons"), and Mayor Michael Lambert ("Lambert"), alleging false arrest in violation of 42 U.S.C. § 1983 as against defendant Commons (Count I), malicious prosecution as against defendants Commons and Village (Count II), and violation of his equal protection right as against defendant Commons (Count III) and as against defendants Commons and defendant Village (Count IV). Plaintiff also alleges defamation against defendants Commons, Village, and Lambert (Counts V–XII). Defendants have filed a motion to strike plaintiff's Local Rule 12(N) Statement of Facts for failure to comply with the local rules and a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, defendants' motion to strike is DENIED and defendants' motion for summary judgment is GRANTED.

## STATEMENT OF FACTS [1]

On March 15, 1996, defendant Commons, a member of defendant Village's police department, received a telephone call from Debrah Lewis. Defendant Commons alleges that Ms. Lewis informed him that Chris Paschal, a friend of her teenage son, admitted that he had stolen a ring from her. The ring had previously belonged to Ms. Lewis' father, but defendant Commons claims that he was told by Ms. Lewis that the ring was a woman's ring. Defendant Commons states that he was told that Chris Paschal sold the ring for $20.00 to plaintiff at the Video Express store. Video Express/International Jewelers is a store, located in defendant Village, that rents videotapes and sells jewelry. Plaintiff owns and operates the store.

Ms. Lewis informed defendant Commons that she had gone to Video Express and had seen what she claimed was her ring being sold as new for almost $300.00. Ms. Lewis told defendant Commons that Chris Paschal's father, John Paschal, then purchased the ring from Video Express for $297.34 and gave Ms. Lewis the ring. Ms. Lewis said that she thereafter took the ring to a second jewelry store and that store informed her that the ring had been coated to appear as new, but that the ring was not new. Chris Paschal and John Paschal provided written statements to defendant Village's police department on March 15, 1996 and Ms. Lewis and her son provided written statements to defendant Village's police department on March 21, 1996.

Plaintiff and his wife, Sandy Sarantakis, claim that the ring sold to John Paschal was not the ring purchased from Chris Paschal and therefore not Ms. Lewis' ring. Plaintiff states that the ring was purchased in Las Vegas, Nevada and that on January 20, 1996 a customer, Dave McMackin, placed a $100.00 down payment on a layaway agreement for the ring. On January 22, 1996, plaintiff and Ms. Sarantakis allege that the ring was sized at another jewelry store. On February 5, 1996, Mr. McMackin paid an additional $45.00 towards the purchase of the ring, but then decided to terminate his layaway agreement on the ring and make a different purchase. Plaintiff and Ms. Sarantakis claim that the ring was placed back in the store jewelry case until Ms. Sarantakis sold the ring to John Paschal on March 14, 1996.

Ms. Sarantakis states that on or about March 20, 1996 she purchased a ten–carat gold cubic zirconia ring from Chris Paschal and that Jason Ortiz was present during the transaction. Ms. Sarantakis says that, in front of Chris Paschal, she tested the gold on the ring to determine that it was ten carats and used an ultraviolet scope to test the stones. She informed Chris Paschal that the stones were cubic zirconia and that the scrap value of the gold was $20.00. Chris Paschal sold the ring to Ms. Sarantakis for $20.00. Ms. Sarantakis states that plaintiff was not present during this transaction. Both parties agree that Ms. Sarantakis actually pur-

---

**1.** The following statement of facts comes from the parties' Local Rule 12(M) and (N) statements of material facts and accompanying exhibits.

chased the ring from Chris Paschal. Ms. Sarantakis alleges that the ring was melted down into scrap a few weeks later.

On March 18, 1996, the then police chief of defendant Village's police department, Ken Miller, had a conversation with Ms. Sarantakis. He states that Ms. Sarantakis informed him that she purchased a ten–carat gold cubic zirconia ring from Chris Paschal several weeks prior and that plaintiff did not purchase the ring. On or about March 20, 1996, then police chief Miller had a conversation with defendant Commons. Then police chief Miller knew that defendant Commons was making inquires regarding the purported theft and sale of Ms. Lewis' ring. Then police chief Miller told defendant Commons that Ms. Sarantakis, not plaintiff, purchased the ring from Chris Paschal. Defendant Commons allegedly replied "I don't care, I want Andy." Defendant Commons denies this. Mr. Miller was defendant Village's police chief until May 21, 1996. On May 21, 1996, defendant Lambert, mayor of defendant Village, appointed defendant Commons as acting police chief.

Defendant Commons states that he discussed his investigation of the theft of Ms. Lewis' ring with defendant Lambert and defendant Village Trustee Fred Rode, who was chairman of the Police Commission. On April 4, 1996, defendant Commons asked plaintiff to attend a meeting at defendant Village's Village Hall. At the meeting, defendant Commons presented plaintiff with an agreement to sign regarding the purchase of the ring. Plaintiff refused to sign the agreement. The April 4, 1996 meeting was the only time defendant Commons spoke with plaintiff regarding the ring.

On April 18, 1996, defendant Commons sought an arrest warrant that was issued for the arrest of plaintiff on the charge of knowingly obtaining control over stolen property with the intent of depriving Debrah Lewis permanently of the use of the property. Plaintiff turned himself in and was arrested pursuant to the warrant. On April 18, 1996, the Lake County State's Attorney filed an information against plaintiff for the crime of knowingly obtaining control over the stolen property of Debrah Lewis with the intent of depriving Debrah Lewis permanently of the use of the property. The criminal matter was scheduled for trial on June 19, 1996. On that date, the assistant state's attorney Donald Morrison, Judge Victoria Martin, and Steven Simonian, plaintiff's criminal attorney, held a conference to determine if the matter could be resolved without a trial. After the conference, defendants allege that Mr. Simonian and Mr. Morrison had a conversation regarding the payment of restitution by plaintiff. Mr. Morrison states in his affidavit that plaintiff paid restitution. Plaintiff claims in his affidavit that he never authorized the payment of restitution nor did he ever pay restitution and he has no knowledge that restitution was ever paid. Ms. Lewis says in her deposition that she never received any money. John Paschal states that the state's attorney gave $150.00 to Ms. Lewis and that Ms. Lewis gave him $50.00 and Ms. Lewis kept the rest. On June 19, 1996, Mr. Morrison authorized that plaintiff's criminal charge be *nolle prossed* and plaintiff was discharged.

On or about May 12, 1996, plaintiff and Ms. Sarantakis state that a suspicious man entered the Video Express store.[2] Shortly after the man left, Ms. Sarantakis received a phone call from Bruce Edwards, a defendant Village dispatcher. Mr. Edwards stated that the suspicious person was behind the building and that plaintiff should investigate the matter. Defendant Village police officers who were in the vicinity allegedly refused to enter plaintiff's store. Defendant Commons had issued an order that defendant Village's police officers were not to go into plaintiff's store, in any capacity, until after plaintiff's criminal case was adjudicated. Defendant Commons admits that he made the order but denies that the order prohibited entering the store to provide police services. Then police chief Miller states that he was aware, prior to March 20, 1996, that defendant Commons had instituted a policy to prevent defendant

---

**2.** This court notes that plaintiff's complaint alleges that the incident occurred on or about May 13, 1996. This court, however, will use the date May 12, 1996, which is contained in plaintiff's Local Rule 12(N) statement of material facts and attached affidavits.

Village police officers from entering plaintiff's business. On or about March 20, 1996, then police chief Miller had a conversation with defendant Commons regarding the policy and then police chief Miller states that he negated it in his capacity as police chief.

In June 1996, defendant Lambert attended a private dinner party at which he spoke with state senator Adeline Geo–Karis. Ms. Geo–Karis was upset with the way defendant Commons was handling plaintiff's case. Defendant Lambert defended defendant Commons' actions. Defendant Lambert indicated to Ms. Geo–Karis that this was not the only time that plaintiff had been suspected of dealing in stolen merchandise and that defendant Commons had reason to believe that plaintiff may be dealing in drugs as well. At this time, defendant Lambert admits that he was unaware of any ongoing police investigation by defendant Village's police department regarding plaintiff's purported use or distribution of illegal narcotics and that defendant Lambert was customarily apprised of ongoing investigations. Plaintiff states that he does not deal in stolen merchandise and that he does not use or sell drugs.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

## ANALYSIS

### I. *Defendants' Motion to Strike Plaintiff's Local Rule 12(N) Statement of Facts*

Defendants have filed a motion to strike plaintiff's Local Rule 12(N) statement of material facts. Defendants claim that in plaintiff's Local Rule 12(N) statement of material facts, most of the responses to defendants' Local Rule 12(M) statement of material facts do not comply with the local rule requiring that denials be supported by facts and specific references to affidavits, records, or other materials. This court is aware that denials and assertions of fact must be supported by specific references to affidavits, records, or other supporting materials. This court will review plaintiff's Local Rule 12(N) statement of material facts following these principles and will accord plaintiff's statements the weight that they deserve. This court, however, will not strike plaintiff's entire Local Rule 12(N) statement of material facts. Accordingly, this court will take into consideration that some of plaintiff's statements do not properly cite to any supporting evidence.

### II. *False Arrest (Count I)* [3]

#### A. *Defendant Commons in his Official Capacity*

 Count I of plaintiff's complaint states that he is suing defendant Commons

---

**3.** Plaintiff's complaint states that he is bringing his claim for false arrest against defendant Commons under 42 U.S.C. § 1983 alleging a violation of his Fourteenth Amendment right under the United States Constitution. Following *Albright v. Oliver*, 510 U.S. 266, 273–74, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994), however, plaintiff's

claim is governed by the Fourth Amendment. Defendants in their memorandum of law in support of their motion for summary judgment addressed plaintiff's claim as a Fourth Amendment violation. Defs.' Mem. of Law in Supp. of Mot. for Summ. J. at 5 n. 2. This court must analyze

in both his individual and official capacities. A suit against a municipal employee in the employee's official capacity is considered a suit against the municipality itself. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Thus, plaintiff's claim in Count I against defendant Commons in his official capacity is considered a claim against defendant Village. To state a § 1983 claim against defendant Village, plaintiff must allege that an official policy, practice, or custom adopted or condoned by defendant Village's policymakers directly caused his alleged injury. *Caldwell v. City of Elwood,* 959 F.2d 670, 673 (7th Cir.1992). Count I of plaintiff's complaint does not allege the requisite unconstitutional policy, practice, or custom by defendant Village. Therefore, Count I of plaintiff's complaint as against defendant Commons in his official capacity is dismissed.

### B. *Defendant Commons in his Individual Capacity*

■ Count I contains a claim for false arrest of plaintiff by defendant Commons. Defendant Commons arrested plaintiff for knowingly obtaining control over the stolen property of Debrah Lewis with the intent of depriving Debrah Lewis of the permanent use of her property in violation of 720 ILCS 5/16–1(a)(4)(A). In order to prove the crime of knowingly receiving stolen property, it must be shown that: (1) property was stolen by a person other than the one charged with receiving the property; (2) the one charged with receiving stolen property actually received property or aided in concealing it; (3) the receiver knew the property was stolen at the time of receipt; and (4) the receiver received the property for his or her own gain or to prevent the owner from again possessing it. *People v. Grodkiewicz,* 16 Ill.2d 192, 157 N.E.2d 16 (1959).

■ In order for a plaintiff to prevail on a claim for false arrest, the plaintiff must show that the police officer did not have probable cause to make the arrest. *Simmons v. Pryor,* 26 F.3d 650, 654 (7th Cir. 1993), *cert. denied,* 511 U.S. 1082, 114 S.Ct. 1833, 128 L.Ed.2d 461 (1994). "Even mali-

cious motives will not support a claim of false arrest if probable cause exists." *Id.* A court may decide the issue of probable cause when there is no dispute over the material facts. *Jones v. Webb,* 45 F.3d 178, 182 (7th Cir. 1995). "Probable cause can be found as a matter of law, however, only when the facts permit but one conclusion—that is, 'only when no reasonable jury could find that the officer did not have probable cause' to make an arrest." *Id.* (quoting *Maxwell v. City of Indianapolis,* 998 F.2d 431, 434 (7th Cir. 1993)). Courts are "generally hesitant to grant summary judgment in § 1983 actions which raise the issue of probable cause." *Reardon v. Wroan,* 811 F.2d 1025, 1027 (7th Cir.1987). Probable cause exists if at the moment of the arrest, the facts and circumstances within the defendant's knowledge and of which the defendant had reasonably trustworthy information were sufficient to warrant a prudent person in believing that a crime was being or had been committed. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991).

Defendant Commons' application for the arrest warrant against plaintiff and defendant Commons' subsequent arrest of plaintiff pursuant to that warrant were based upon the statements of four citizens: Ms. Lewis, her son, John Paschal, and Chris Paschal. Taking the statements of these individuals together, there was probable cause for plaintiff's arrest for knowingly obtaining control over the stolen property of Debrah Lewis with the intent of depriving Debrah Lewis of the permanent use of her property. In the statements, defendant Commons was informed that Chris Paschal had stolen a ring from Debrah Lewis and that the ring was located in plaintiff's store. Defendant Commons was told that plaintiff's store paid only twenty dollars to Chris Paschal, a teenager, for the ring. The statements also informed defendant Commons that Ms. Lewis went to plaintiff's store herself and identified her ring in plaintiff's store's jewelry showcase. Ms. Lewis stated that her ring was being sold by plaintiff's store for approximately three hundred dollars.

plaintiff's claim as a Fourth Amendment violation and does so in the following analysis.

■ Given the information known by defendant Commons, it could appear to a reasonable person that plaintiff had engaged in criminal conduct: knowingly obtaining control over stolen property. With respect to the crime of knowingly receiving stolen property, "[g]uilty knowledge may be established by proof of circumstances which would induce belief in a reasonable mind that the property had been stolen and by the receipt of such property by the accused without inquiry as to its source or title of the one from whom it was received." *People v. Grodkiewicz*, 16 Ill.2d 192, 196, 157 N.E.2d 16, 19 (1959). The facts show that Chris Paschal, a teenage boy, brought in a ring for sale to plaintiff's store and plaintiff's store purchased the ring without asking Chris Paschal how he obtained the ring. Furthermore, taking the facts as stated to defendant Commons as true, Chris Paschal sold a ring worth approximately three hundred dollars to plaintiff's store for twenty dollars. It would be reasonable, pursuant to these facts, to conclude that the ring was stolen since twenty dollars would appear to be a nominal sum to pay for ring that would be sold for approximately three hundred dollars.

■ Defendant Commons was also told by Ms. Lewis that after John Paschal purchased her ring back from plaintiff's store, Ms. Lewis had the ring tested by a second jewelry store. That store said that the ring had been coated to appear as new. All of this information could lead a reasonable person to conclude that plaintiff paid a small sum for the ring, refurbished the ring, and sold the ring for a larger sum for his own personal gain. Defendant Commons relied on the four witnesses' statements supplied to him. There was no indication given to defendant Commons that these four individuals were not telling the truth nor has plaintiff argued as such. Based upon all of the facts contained in the statements provided to defendant Commons, there was sufficient probable cause for defendant Commons to arrest plaintiff for knowingly receiving stolen property.

■ Plaintiff argues that plaintiff himself did not actually purchase Ms. Lewis' ring. Plaintiff claims that his wife, Sandy Sarantakis, was the individual who actually purchased the ring from Chris Paschal. Plaintiff's argument is irrelevant. The factual circumstances known to defendant Commons allowed the reasonable inference that plaintiff and his wife were cohorts, agents of one another, in the purchase and offer of sale of Ms. Lewis' ring. The issue in determining whether there was probable cause for a police officer to make an arrest is based upon the facts known to the police at the time of the arrest. "[I]t's what the police know, not whether they know the truth, that matters." *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir.1986), *cert. denied*, 481 U.S. 1028, 107 S.Ct. 1952, 95 L.Ed.2d 525 (1987). Probable cause requires only a substantial chance of criminal activity, not an actual showing. *Id.* If a police officer arrests a person based on a private citizen's complaint that if true would justify the arrest and the officer reasonably believes the complaint is true, that officer is not liable if the complaint is later concluded to be unfounded. *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir.1984). Defendant Commons relied on the information provided to him by the four witnesses. Defendant Commons' conclusion that plaintiff committed a crime, based on these four witnesses' statements was not unreasonable. Plaintiff has made no argument that the statements defendant Commons received were unreliable.

■ Plaintiff also argues that then police chief Miller told defendant Commons that plaintiff's wife actually purchased the ring. This is of no consequence in defeating probable cause because of the reasonable inferences arising from plaintiff's and his wife's business, as well as personal, relationship. Moreover, the fact that another police officer did or did not think subjectively that there was probable cause for the arrest does not preclude a finding that there was probable cause. *Simmons*, 26 F.3d at 655. Also, then police chief Miller never stated that he did not believe that there was not probable cause to arrest plaintiff based on the four witnesses' statements. Plaintiff's wife had the authority to purchase the ring for plaintiff's business. Plaintiff's argument does not defeat probable cause for plaintiff's arrest for

an alleged violation of 720 ILCS 5/16–1(a)(4)(A).

 The ring was identified by Ms. Lewis as being in plaintiff's store's jewelry case. Constructive possession of stolen property is sufficient as an element to establish the crime for which plaintiff was arrested. *People v. Piszczek*, 404 Ill. 465, 470, 89 N.E.2d 387, 390 (1949). An inference of constructive possession is created when the person has control over the premises where the property is found. *People v. Hester*, 271 Ill.App.3d 954, 961, 208 Ill.Dec. 690, 697, 649 N.E.2d 1351, 1358 (1995). The standard for probable cause is an objective standard of whether a reasonable police officer could have found probable cause for the arrest. *Simmons*, 26 F.3d at 655. Given the facts known by defendant Commons at the time of plaintiff's arrest, a reasonable police officer could have believed that there was probable cause for plaintiff's arrest. Defendant Commons was not required to conduct a trial to determine what actually transpired in this case. *Gramenos*, 797 F.2d at 439. Defendant Commons relied on the facts provided to him in the witnesses' statements. Such facts were sufficient to warrant a prudent person in believing that a crime had been committed.

Plaintiff also claims that defendant Commons harbored ill will toward plaintiff and that this demonstrates that there was no probable cause for his arrest. Whether the arrest was made with malicious motives is irrelevant if there was probable cause for the arrest. *Whren v. United States*, — U.S. —, —, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996); *Simmons*, 26 F.3d at 654; *Fernandez v. Perez*, 937 F.2d 368, 371 (7th Cir. 1991). What is relevant is the information known to the police officer at the time of the arrest and whether a reasonable officer could have concluded that probable cause existed to justify the arrest.

 Plaintiff's final argument is that defendant Commons did not adequately investigate the incident to determine plaintiff's ver-

sion of the truth before arresting plaintiff. Once a police officer has sufficient facts to establish probable cause, there is no constitutional obligation to conduct a further investigation to uncover exculpatory evidence. *Forman v. Richmond Police Dep't*, 104 F.3d 950, 962 (7th Cir.1997). "The question is whether [the police] have reasonable grounds on which to act, not whether it was reasonable to conduct a further investigation." *Gramenos*, 797 F.2d at 439. Therefore, in this case defendant Commons was not obligated to continue investigating this incident after he obtained the witnesses' statements that led to the conclusion that probable cause existed for plaintiff's arrest. The information within defendant Commons' knowledge at the time of plaintiff's arrest came from four individuals who gave no indication that the information they provided was not trustworthy. That information was enough to warrant a reasonable person to conclude that plaintiff had committed a crime.

Defendant Commons' arrest of plaintiff was supported by probable cause. Accordingly, defendant Commons' motion for summary judgment on Count I of plaintiff's complaint as against defendant Commons in his individual capacity is granted.[4]

### III. Equal Protection (Count III and Count IV)

#### A. Count III

##### 1. Defendant Commons in his Individual Capacity

 Count III of plaintiff's complaint alleges that defendant Commons in his individual capacity violated plaintiff's right to equal protection. Defendant Commons asserts that he is entitled to immunity from suit on Count III of plaintiff's complaint based on the doctrine of qualified immunity. Qualified immunity shields government agents from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Har-*

4. Defendant Commons raises the issue of qualified immunity as to Count I of plaintiff's complaint. Because this court finds that summary judgment for defendant Commons on the merits

of Count I of plaintiff's complaint is warranted, this court makes no determination as to the issue of qualified immunity on Count I. *Jones v. Watson*, 106 F.3d 774, 781 (7th Cir.1997).

*low v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "Thus, the defendant is immune from suit if the conduct at issue did not violate a right that was clearly established when the conduct occurred, so that the defendant would not have been on notice that his [or her] behavior was 'probably unlawful.'" *Magdziak v. Byrd,* 96 F.3d 1045, 1047 (7th Cir.1996) (quoting *Montville v. Lewis,* 87 F.3d 900, 902–03 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 961, 136 L.Ed.2d 847 (1997)).

■ To determine whether qualified immunity is applicable in a case, the court must make a two part inquiry: (1) does the alleged conduct set out a constitutional violation; and (2) were the constitutional standards clearly established at the time in question. *Hill v. Shelander,* 992 F.2d 714, 717 (7th Cir.1993). Intent is relevant to the first part of the inquiry, but not to the second part. *Wade v. Hegner,* 804 F.2d 67, 70 (7th Cir.1986). Thus, the defendant's subjective state of mind is relevant only to the determination of whether a constitutional violation exists but not in deciding if the constitutional standard was clearly established. *Auriemma v. Rice,* 910 F.2d 1449, 1453 (7th Cir. 1990), *cert. denied,* 501 U.S. 1204, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991). A negative answer to either of the two prongs of this inquiry will conclude the issue and lead to the determination that qualified immunity is applicable. *Forman,* 104 F.3d at 957.

■ Defendant Commons argues that plaintiff cannot show that the constitutional standard was clearly established at the time in question in this case. In this second part of the inquiry, the court must "determine whether, at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established in the particular factual context presented." *Polenz v. Parrott,* 883 F.2d 551, 554 (7th Cir.1989). The plaintiff bears the burden of demonstrating the violation of a clearly established right. *Forman,* 104 F.3d at 957–58. The unlawfulness of the defendant's alleged act should be clear in light of preexisting law. *Jones,* 45 F.3d at 183.

Plaintiff alleges that defendant Commons violated his right for police protection by not appropriately responding to an incident that occurred on May 12, 1996. Plaintiff cites a 1995 case from the Eastern District of Michigan, *Hakken v. Washtenaw County,* 901 F.Supp. 1245 (E.D.Mich.1995), in support of his asserted alleged clearly established constitutional right. In *Hakken,* the plaintiff asserted that she was denied equal protection under the law because she and her deceased daughter were victims of domestic assault and the defendant police officers by policy or custom provided less protection for domestic violence victims. *Id.* at 1249. In ruling on the defendants' motion for summary judgment, the district court held that there was "no definitive Sixth Circuit or Supreme Court decision determining that police policies for handling domestic disputes may violate the victims' right to equal protection on the basis of their sex or status as victims of domestic violence." *Id.* at 1254. The district court stated that at the time of the alleged incidents "it was not 'clearly established' that the equal protection rights of women and victims of domestic violence was [sic] violated when the police accorded different treatment to their calls for assistance in a domestic dispute." *Id.* Therefore, the district court determined that the defendant police officers were entitled to qualified immunity and summary judgment was granted for those defendants. *Id.* In the present case, this court finds that the decision in *Hakken* clearly does not in any way support plaintiff's alleged clearly established constitutional standard.

Plaintiff in this case claims that defendant Village's police did not appropriately respond to a suspicious individual who was allegedly outside of plaintiff's store on May 12, 1996. Plaintiff argues that defendant Commons had issued an order that defendant Village police officers were not to enter plaintiff's store and that as a result of this order, police officers failed to investigate the matter. First, plaintiff has presented no facts to show that the police officers who were allegedly outside of plaintiff's store did not investigate the suspicious individual. The individual was outside of plaintiff's store and plaintiff has not shown that entering plaintiff's store was necessary to investigate the incident. Plaintiff also has not demonstrated that he received unequal

treatment. Furthermore, plaintiff has not shown that defendant Commons acted with such malice as to violate any equal protection right. *See Esmail v. Macrane,* 53 F.3d 176, 179–80 (7th Cir.1995). Moreover, plaintiff has not provided evidence that the officers did not enter plaintiff's store because of the alleged order. According to then police chief Miller, he specifically negated defendant Commons' order in his capacity as the senior-ranking officer of defendant Village's police department.

■■■■■ Second, plaintiff has no constitutionally protected, affirmative right to governmental aid. The constitution "confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989) (holding with respect to the Due Process Clause). The government, however, may not selectively deny services it chooses to provide to individuals on the impermissible basis of discriminating against minorities without violating the Equal Protection Clause. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). But discrimination based merely on individual, rather than group, reasons is insufficient to constitute an equal protection violation. *New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1481 (7th Cir.1990).

■■■ Plaintiff has not pointed to any closely analogous case law to support his position that there was a clearly established constitutional standard at the time of the incident that he had a constitutional right to police assistance on May 12, 1996. Thus, defendant Commons could not have been on notice that his alleged behavior was potentially unlawful. Plaintiff also has not demonstrated that defendant Commons' alleged conduct violated plaintiff's equal protection right. Defendant Commons is therefore entitled to qualified immunity. Accordingly, summary judgment is granted on Count III of plaintiff's complaint as against defendant Commons in his individual capacity.

## 2. *Defendant Commons in his Official Capacity*

Count III of plaintiff's complaint also alleges that defendant Commons in his official capacity violated plaintiff's right to equal protection. A suit against a municipal employee in the employee's official capacity is considered a suit against the municipality itself. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Thus, plaintiff's claim against defendant Commons in his official capacity is considered a claim against defendant Village. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). There are generally three instances in which a municipality may be found to have violated the constitutional rights of a person because of its policies: (1) when an express policy causes a constitutional deprivation; (2) when a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it constitutes a custom with the force of law; or (3) when it is alleged that a person with final policymaking authority caused the constitutional violation. *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 735 (7th Cir.1994).

■■■ Plaintiff in Count III of his complaint alleges that defendant Commons instituted a policy that forbade police officers of defendant Village's police department from entering plaintiff's store and that on or about May 12, 1996, defendant Village's police officers failed to investigate a suspicious person in the vicinity of plaintiff's store pursuant to that policy. Plaintiff claims that defendant Commons' alleged policy was a municipal policy and that defendant Commons is a person with final policymaking authority for defendant Village. Plaintiff's own supporting documents, however, lead to the conclusion that defendant Commons did not have final policymaking authority and therefore could not have instituted an express municipal policy.

Plaintiff states that defendant Commons is the acting police chief of defendant Village and therefore has final policymaking authority. Defendant Commons, however, was appointed acting police chief on May 21, 1996, nine days after the alleged May 12, 1996 incident of which plaintiff complains. Both plaintiff and defendants ignore the fact that on May 12, 1996, the police chief for defendant Village was Ken Miller, not defendant Commons. Furthermore, Ken Miller's affidavit explicitly states that he discussed the alleged policy made by defendant Commons with defendant Commons on or about March 20, 1996 and "specifically negated said policy in [his] capacity as the senior–ranking officer for the Village of Winthrop Harbor Police Department." Miller Aff. ¶ 5. Accordingly, any alleged order made by defendant Commons with respect to plaintiff was negated by the senior–ranking police officer of defendant Village. Whatever defendant Commons' order was to the other police officers, it did not constitute an official express policy of defendant Village. Therefore, according to the undisputed facts, defendant Commons' order was not in effect after March 20, 1996. At the time of the May 12, 1996 incident, defendant Commons was a lieutenant in the police force, below then police chief Miller. Plaintiff makes no claim, and cannot sustain a claim, that a lieutenant in defendant Village's police department who is inferior to the police chief could be the final policymaker for defendant Village or could make official express municipal policy.

 Furthermore, defendants claim that even the police chief of defendant Village does not have final policymaking authority for defendant Village. A municipality's policymaker is determined by local law. *Auriemma v. Rice,* 957 F.2d 397, 400 (7th Cir. 1992). Defendants state that defendant Village's Board retains the authority to implement Village rules and ordinances and that the Board is the final policymaker for defendant Village. Plaintiff concedes somewhat that defendant Village's Board is the final policymaker but maintains that defendant Commons, as acting chief of police is the policymaker with respect to the conduct of police investigations. Plaintiff fails to point to any local law that states that the chief of police is the final policymaker for defendant Village. That a police chief may have authority to dictate how a police investigation is conducted does not transform that authority into final policymaking authority for the municipality. "Authority to make a final decision need not imply authority to establish rules." *Id.* "The discretion to make final decisions to carry out the policies of a local law enforcement entity does not equate to policymaking authority." *Eversole v. Steele,* 59 F.3d 710, 716 (7th Cir.1995). Furthermore, as stated previously, defendant Commons was not even the acting police chief during the time in question in this case. Municipalities are answerable only for their own decisions and policies, they are not vicariously liable for the constitutional torts of their agents. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38.

Therefore, since plaintiff has failed to establish that defendant Commons is a final policymaker for defendant Village or that defendant Village had an express policy that violated plaintiff's constitutional rights, defendants' motion for summary judgment on Count III as to defendant Commons in his official capacity is granted.

### B. *Count IV*

Count IV of plaintiff's complaint repeats each of the allegations in Count III of plaintiff's complaint and merely adds one paragraph that contains a claim against defendant Village under the theory of respondeat superior. The United States Supreme Court, however, has consistently articulated the principle that a municipality may not be held liable under section 1983 on a theory of respondeat superior. *See Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 735–36, 109 S.Ct. 2702, 2722–23, 105 L.Ed.2d 598 (1989); *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036. Since Count IV of plaintiff's complaint contains the exact same allegations against defendant Commons as in Count III of plaintiff's complaint and since Count IV only alleges a claim against defendant Village under section 1983 on a theory of respondeat superior, this court must grant dismiss Count IV of plaintiff's complaint.

IV. *Plaintiff's State Law Claims*

Plaintiff's complaint also contains state law claims for malicious prosecution (Count II) and defamation (Counts V–XII). This court, having granted defendants' motion for summary judgment on Counts I, III, and IV, which are plaintiff's only federal question claims, declines jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367(c)(3); *Hager v. City of West Peoria*, 84 F.3d 865, 874 n. 7 (1996). Without addressing the merits of plaintiff's state law claims, this court dismisses Counts II and V–XII of plaintiff's complaint.

## *CONCLUSION*

Based on the above stated reasons, defendants' motion to strike plaintiff's Local Rule 12(N) statement of material facts is DENIED and defendants' motion for summary judgment is GRANTED. This court, having dismissed all of plaintiff's federal question claims, dismisses plaintiff's remaining state claims. This case is dismissed in its entirety. All other pending motions are moot.